# COMPLAINT

## Plaintiff List

Bay Plaza Properties, LLC
Bee Ridge, LLC
Calusa Lakes Community Association, Inc.
Cramer Motors, Inc.
Florida Broadacre Trailer Lodge, Inc.
Florida Rock Concrete, Inc.
Kimal Lumber Company
Pine Ranch East Owners Association, Inc.
Post Office Properties, Inc.
Public Storage
Putle Home Corporation
Sarasota Investment Company Inc.
Southern Spring & Stamping, Inc.
Stoneybrook Golf & Country Club of Sarasota, Inc.
Tournament Players Club at Prestancia, Inc.
Trinity Chapel of Sarasota, Inc.
Triple Diamond Commercial Properties, LLC
Venice Plaza LTD
West Coast Inland Navigation District
Louis L. Alderman
Alexandrine Boswell
Ann Converse, Susan J. Beltran, Cathy C. Siano, and Sandy Chestnutt
Patricia M. Davids
Dee A. Deaterly
Kelly A. Glausman
Jay Hardy
Faye Howard
Ronald Miller and M&H Corporation
Ilene Mirman
Kenneth S. Patton
Sharon L. Wilkie and the James H. Wilkie Estate
Robert L. Williams

ORIGINAL

FILED
MAR 2 1 2008
U.S. COURT OF
FEDERAL CLAIMS

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

BAY PLAZA PROPERTIES, LLC, )
)
BEE RIDGE, LLC, )
)
CALUSA LAKES COMMUNITY )
ASSOCIATION, INC., )
)
CRAMER MOTORS, INC., )
)
FLORIDA BROADACRE TRAILER LODGE, )
INC., )
)
FLORIDA ROCK CONCRETE, INC., )
)
KIMAL LUMBER COMPANY, )
)
PINE RANCH EAST OWNERS )
ASSOCIATION, INC., )
)
POST OFFICE PROPERTIES, INC., )
)
PUBLIC STORAGE, )
)
PULTE HOME CORPORATION, )
)
SARASOTA INVESTMENT COMPANY )
INC., )
)
SOUTHERN SPRING & STAMPING, INC., )
)
STONEYBROOK GOLF & COUNTRY CLUB )
OF SARASOTA, INC., )
)
TOURNAMENT PLAYERS CLUB AT )
PRESTANCIA, INC., )
)
TRINITY CHAPEL OF SARASOTA, INC., )
)
TRIPLE DIAMOND COMMERCIAL )
PROPERTIES, LLC, )
)
VENICE PLAZA LTD., )
)

No. 08-198 L

| | |
|---|---|
| WEST COAST INLAND NAVIGATION DISTRICT, | ) |
| LOUIS L. ALDERMAN, | ) |
| ALEXANDRINE BOSWELL, | ) |
| ANN CONVERSE, SUSAN J. BELTRAN, CATHY C. SIANO, AND SANDY CHESTNUTT, | ) |
| PATRICIA M. DAVIDS, | ) |
| DEE A. DEATERLY, | ) |
| KELLY A. GLAUSMAN, | ) |
| JAY HARDY, | ) |
| FAYE HOWARD, | ) |
| RONALD MILLER AND M&H CORPORATION, | ) |
| ILENE MIRMAN, | ) |
| KENNETH S. PATTON, | ) |
| SHARON L. WILKIE AND THE JAMES H. WILKIE ESTATE, and | ) |
| ROBERT L. WILLIAMS | ) |
| Plaintiffs, | ) |
| vs. | ) |
| THE UNITED STATES OF AMERICA, | ) |
| Defendant. | ) |

**COMPLAINT**

## SUMMARY OF THIS CASE

The Plaintiffs are citizens of the United States. The Plaintiffs are also the fee owners of land in Sarasota County, Florida. In 1910, the Seaboard Air Line Railway acquired an easement for the operation of a railroad across an approximately 12 mile long corridor from Sarasota to Venice, Florida. This railroad right-of-way was used for, among other purposes, the operation of trains used by the Ringling Brothers Circus.

This railroad easement was granted for the operation of a railroad and not for any other purpose. Under the terms of the relevant easement instruments and under Florida law, once the successor to the Seaboard Air Line Railway (which is now the Seminole Gulf Railway, L.P. ("SGLR")) ceased operating a railroad across the right-of-way, the railroad easement was abandoned and the Plaintiffs, as the fee owners of this land, regained their right to the exclusive use and physical possession of their property.

However, § 8 (d) of the 1983 amendments to the National Trails System Act, 16 U.S.C. §1247(d) ("Trails Act"), provides that the issuance of a Notice of Interim Trail Use ("NITU") by the Surface Transportation Board (STB) forestalls or precludes the Plaintiff property owners "reversionary"[1] property rights and allows the Plaintiffs' property to be transferred to a trail user notwithstanding whatever "reversionary" interest the Plaintiff's possess to their property under Florida law.

[1] Plaintiff's use the term "reversionary" because such term was used in the generic sense by the Federal Circuit in *Barclay* and *Renewal Body Works*. Technically this is not a "reversion" of the property. Rather the Plaintiff's and their predecessors in title always held fee title to the property. Their fee title had been burdened by an easement for operation of a railroad. Upon the railroad's abandonment of this easement, their fee became "unburdened" by this easement to the extent that "reversionary" is used in this pleading it is used in the generic sense.

The STB issued a NITU affecting this abandoned railroad right-of-way on April 2, 2004. Pursuant to the Trails Act and this NITU, Sarasota County (and/or the Trust for Public Land) entered into negotiations with SGLR and CSX Transportation, Inc, (CSX) for acquisition of an easement for a public access recreational trail to be located across the abandoned railroad corridor. Under the terms of the original railroad easement, and under Florida law, SGLR and CSX did not own or possess any right to grant Sarasota County or the Trust for Public Land an easement across the Plaintiffs' land.

The denial of the Plaintiff landowners' right to possess their property and the appropriation of a new easement for an interim public recreational trail and the creation of a new easement for a future railroad corridor across the Plaintiffs` property is a taking of the Plaintiffs' property for which the Fifth Amendment to the U.S. Constitution requires that the United States pay "just compensation" to the Plaintiff property owners. To date, the United States has taken these landowners property and has not paid, nor has the federal government offered to pay, any compensation.

This action is the claim by these United States citizens brought pursuant to the Fifth Amendment and the Tucker Act 28 U.S.C. § 1491 (a)(1) seeking "just compensation" for the value of their property taken from them by the federal government through operation of the Trails Act. The "just compensation" they seek includes compensation for the delay between the date their property was taken (or made subject to the Trails Act) and when the federal government ultimately pays them compensation.

They also seek the government to pay their attorney fees and expenses incurred in bringing this action pursuant to the Declarations of Taking Act 42 U.S.C. § 4654 (c).

## COMPLAINT

## JURISDICTION

1. This court has jurisdiction pursuant to 28 U.S.C. §1491(a)(1) ("Tucker Act"), in that this action presents a claim against the United States which is founded upon the Constitution and Statutes of the United States.

## STATUTES AND CONSTITUTIONAL PROVISIONS

2. Plaintiffs' claim is governed by the following statute and constitutional provisions:

(a) The Fifth Amendment to the United States Constitution which provides, "No person shall be . . . deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation."

(b) National Trails System Act Amendments of 1983, 16 U.S.C. § 1247(d) ("Trails Act")

(c) The Tucker Act, 28 U.S.C. § 1491(a)("Tucker Act") which provides in relevant part, "The United States Court of Federal Claims shall have jurisdiction to render judgment on any claim against the United States founded upon the Constitution."

(d) The Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. §4654 (c) (2000) provides that just compensation includes, "reasonable costs, disbursements and expenses, including reasonable attorney, appraisal and engineering fees, actually incurred because of [the] proceeding."

## STATEMENT OF FACTS

3. In 1910, the Seaboard Air Line Railway acquired an easement for the operation of a railroad line between the cities of Sarasota and Venice, Florida.

4. The majority of this easement was acquired by the Seaboard Air Line Railway across property owned by members of the Palmer Family, specifically, Potter Palmer, Jr. and from Adrian C. Honore, as well as Sarah O. Webber.

5. The easement granted to the Seaboard Air Line Railway specifically provided that the easement was for the purpose of operating a railroad and provided that, "This conveyance is made upon the express condition, however, that if the Seaboard Airline Railway shall not construct upon said land and commence the operation thereon with (sic) one year of the date hereof of a line of railroad, or, **if at any time thereafter the said Seaboard Air Line Railway shall abandon said line for railroad purposes then the above described pieces and parcels of land shall *ipso facto* revert to and again become the property of the undersigned, his heirs, administrators and assigns.**" (A complete copy of these easement instruments is attached as "Exhibit 1."[2])

6. Other easements by which the Seaboard Air Line Railway acquired the right to use the property across which the railroad was constructed contained similar provisions limiting the use of the property by the railroad to an easement for the purpose of operating a railroad.

7. On December 15, 2003, Seminole Gulf Railway, L.P. (SGLR), filed with the Surface Transportation Board a petition under 49 U.S.C. 10502 for exemption from the provisions of 49 U.S.C. 10903 to abandon an approximately 12.43-mile portion of its Venice Branch between milepost SW 892 outside the city limits of the City of Sarasota, and milepost 904.4 near the City of Venice, in Sarasota County, FL. The line includes a "wye" and stub at approximately milepost SW 904.2 and side tracks.

---

[2] All exhibits are incorporated by reference throughout this Petition.

8. According to SGLR, no railroad traffic has moved over this railroad corridor since March, 2002 and, "there is little likelihood of traffic returning to the [rail] line."

9. The SGLR (and CSX) are the successors and assigns of the Seaboard Air Line Railway.

10. On April 2, 2004, the federal STB issued a NITU for this abandoned railroad corridor. (A copy of the NITU is attached as Exhibit "2").

11. Pursuant to this NITU, the SGLR and CSX granted The Trust for Public Land an option to acquire the rail line for conversion to a trail.

12. The Trust for Public Land agreed to work with Sarasota County to convert the rail line into a public-access recreational trail.

13. The negotiating period for reaching a Trail Use Agreement between the SGLR and Sarasota County or the Trust for Public Land was extended by the STB.

14. On January 13, 2005, a Quit Claim Deed was recorded between CSX Transportation, Inc. (the entity from which SGLR leased the abandoned right-of-way) and The Trust for Public Land. This deed was executed pursuant to a Trail Use Agreement that Plaintiffs believe was reached on or about December 2004. (A complete copy of this Quit Claim Deed is attached as "Exhibit 3".)

15. This Quit Claim Deed affects more than 155 acres of property in Sarasota County, Florida including that property owned by the Plaintiffs.

16. This Quit Claim Deed was expressly executed and entered into by the Trust for Public Land and CSX in reliance upon the STB's issuance of the NITU and the provisions of the Trails Act.

17. The Trust for Public Land is a national, nonprofit, land conservation organization. The Trust for Public Land is not a railroad and is not authorized by any state or by the federal Surface Transportation Board to operate a railroad.

18. Sarasota County, Florida, a municipal entity, is not authorized by the state of Florida (or by any other state) or by the federal Surface Transportation Board to operate a railroad.

19. The SGLR (and/or Sarasota County) has removed the rails and ties from the abandoned right-of-way.

20. The National Trails System Act Amendments of 1983, 16 U.S.C. § 1247(d) ("Trails Act") provide, "in the case of interim use of any established railroad rights-of-way pursuant to donation, transfer, lease, sale, or otherwise in a manner consistent with this chapter, if such interim use is subject to restoration or reconstruction for railroad purposes, such interim use shall not be treated, for purposes of any law or rule of law, as an abandonment of the use of such rights-of-way for railroad purposes."

21. But for operation of the Trails Act, the Plaintiffs would have the exclusive right to physical ownership, possession, and use of their property free of any easement for recreational trail use or future railroad use.

22. The United States Supreme Court in *Preseault v. United States* (*Preseault I*), 494 U.S. 1 (1990) held that Congress possessed the constitutional authority to enact the Trails Act and to take the Plaintiffs' property for conversion to a public-access recreational trail and preservation of a railroad easement for a possible future railroad corridor.

23. However, the Supreme Court in *Preseault I* and the Federal Circuit sitting *en banc* in *Preseault v. United States*, (*Preseault II*), 100 F.3d 1525 (Fed. Cir. 1996) held that the Fifth Amendment to the United States Constitution requires the United States to pay the property owners for the value of that property taken by operation of Section 8(d) of the Trails Act. To wit, Justice O'Connor wrote in *Preseault I*, "[the Trails Act] provides that interim trail use 'shall not be treated, for any purposes of any law or rule of law, as an abandonment of the use of such rights-of-way for railroad purposes.' This language gives rise to a takings question in the typical rails-to-trails case because many railroads do not own their rights-of-way outright but rather hold them under easements or similar property interests. While the terms of these easements and applicable state law vary, frequently the easements provide that the property reverts to the abutting landowner upon abandonment of rail operations. State law generally governs the disposition of reversionary interests. By deeming interim trail use to be like discontinuance rather than abandonment, Congress prevents property interests from reverting under state law." *Preseault I* at 8.

24. The U.S. Court of Appeals for the Federal Circuit in *Preseault II*, held "We conclude that the taking that resulted from the establishment of the recreational trail is properly laid at the doorstep of the Federal Government. *** In the case before us there was a similar physical entry upon the private lands of the [property owners], acting under the Federal Government's authority pursuant to the ICC's [now STB's] Order. That it was for a valued public use is not the issue. We have here a straightforward taking of private property for a public use for which just compensation must be paid." *Preseault II* at 1551.

25. The property over which the abandoned SGLR right-of-way is located is valuable property.

26. Creating a public-access recreational trail across the Plaintiffs' property and appropriating a new easement for possible future railroad use has taken from the Plaintiffs not just the value of the land physically appropriated for this trail corridor but has also greatly diminished the value of the Plaintiffs' property adjoining this trail corridor.

27. The value of the property taken from the Plaintiffs (both that physically appropriated for a public trail and that diminished value of the Plaintiffs' adjoining property) is very substantial.

28. The Federal Circuit in *Caldwell v. United States*, 391 F.3d 1226 (Fed. Cir. 2004) and *Barclay v. United States*, 443 F.3d 1368 (2006) held that this claim for compensation has arisen upon the date that the Surface Transportation Board issued the NITU. Specifically, Judge Dyk of the Federal Circuit wrote, "[t]he taking, if any, when a railroad right-of-way is converted to interim trail use under the Trails Act occurs when state law reversionary property interests that would otherwise vest in the adjacent landowners are blocked from so vesting. Abandonment is suspended and the reversionary interest is blocked 'when the railroad and trail operator communicate to the STB their intention to negotiate a trail use agreement and the agency issues an NITU that operates to preclude abandonment under section 8(d)' of the Trails Act. We concluded that '[t]he issuance of the NITU is the only government action in the rail banking process that operates to prevent abandonment of the corridor and to preclude the vesting of state law reversionary interests in the right of way.' Thus, a Trails Act taking begins and a

takings claim accrues, if at all, on issuance of the NITU." *Barclay v. United States*, 443 F.3d 1368 (2006) (Judge Dyk cited his own prior decision in *Caldwell v. United States* as authority.)

29. The United States Constitution requires the federal government to pay "just compensation" to all those property owners' holding fee title to land that was subject to the NITU.

**THE PARTIES**

**Bay Plaza Properties, LLC**

30. Bay Plaza Properties, LLC ("Bay Plaza") is a Florida Limited Liability Corporation and a citizen of the United States of America.

31. On July 1, 1998, Bay Plaza acquired fee title to property in Sarasota County, Florida by that warranty deed recorded in the Sarasota County Recorder of Deeds' Office on July 2, 1998 by Instrument number 1998087387. (A copy of the deed by which Bay Plaza acquired title to its property is attached as "Exhibit 4.")

32. Bay Plaza's property includes fee title to approximately 308 feet of property lying on the eastern side of the centerline of the abandoned SGLR right-of-way that is now subject to the easement for an interim public-access recreational trail and possible future railroad reactivation. (A copy of a survey for Bay Plaza is attached as "Exhibit 5.")

33. On April 2, 2004 (the NITU date), Bay Plaza was fee owner of this property with Parcel Identification Number 0406-15-0002. (A copy of the Sarasota County Appraiser report for this property is attached as "Exhibit 6.")

**Bee Ridge, LLC**

34. Bee Ridge, LLC ("Bee Ridge") is a Florida Limited Liability Corporation and a citizen of the United States of America.

35. On August 21, 2003, Bee Ridge acquired fee title to property in Sarasota County, Florida by that special warranty deed recorded in the Sarasota County Recorder of Deeds' Office on August 28, 2003 by Instrument number 2003173977. (A copy of the deed by which Bee Ridge acquired title to its property is attached as "Exhibit 7.")

36. Bee Ridge's property includes fee title to approximately 625 feet of property lying on the western side of the centerline of the abandoned SGLR right-of-way that is now subject to the easement for an interim public-access recreational trail and possible future railroad reactivation. (A copy of a survey for Bee Ridge is attached as "Exhibit 8.")

37. On April 2, 2004 (the NITU date), Bee Ridge was fee owner of this property with Parcel Identification Number 0070-02-0029. (A copy of the Sarasota County Appraiser report for this property is attached as "Exhibit 9.")

**Calusa Lakes Community Association, Inc.**

38. Calusa Lakes Community Association, Inc. ("Calusa Lakes") is a Florida Corporation in Good Standing and a citizen of the United States of America.

39. On October 1, 2003, Calusa Lakes acquired fee title to property in Sarasota County, Florida by that quit claim deed recorded in the Sarasota County Recorder of Deeds' Office by Instrument number 200319979. (A copy of the quit claim deed by which Calusa Lakes acquired title to its property is attached as "Exhibit 10.")

40. Calusa Lakes' property includes fee title to approximately 1,200 feet of property lying on the eastern side of the centerline of the abandoned SGLR right-of-way that is now subject to the easement for an interim public-access recreational trail and possible future railroad reactivation. (A copy of the plat for Calusa Lakes is attached as "Exhibit 11.")

41. On April 2, 2004 (the NITU date), Calusa Lakes was fee owner of this property located in Plat Book 35, Page 34-B with Parcel Identification number 0162-01-0056. (*See id.*)

**Cramer Motors, Inc.**

42. Cramer Motors Inc. ("Cramer Motors") is a Florida Corporation in Good Standing and a citizen of the United States of America.

43. On July 9, 1993, Cramer Motors acquired fee title to that property in Sarasota County, Florida by warranty deed recorded in the Sarasota County Recorder of Deeds' Office on July 23, 1993, in Book 2530, Page 632 (currently identified as parcel identification number 0427-12-0002). On October 30, 2001, Cramer Motors acquired fee title to that property in Sarasota County, Florida by warranty deed recorded on October 30, 2001 by instrument number 2001156734 (currently identified as parcel identification umber 0427-13-0018). (A copy of the warranty deeds by which Cramer Motors acquired its property are attached respectively as "Exhibit 12" and "Exhibit 13.")

44. Both properties together include fee title to a total of over 800 feet of property lying on the eastern side of the centerline of the abandoned SGLR right-of-way that is now subject to the easement for an interim public-access recreational trail and possible future railroad reactivation.

45. On April 2, 2004 (the NITU date), Cramer Motors was fee owner of these properties with Parcel Identification Numbers 0427-12-0002 and 0427-13-0018. (A copy of the Sarasota County Appraiser reports are attached respectively as "Exhibit 14" and "Exhibit 15.")

**Florida Broadacre Trailer Lodge, Inc.**

46. Florida Broadacre Trailer Lodge, Inc. (formerly known as "Broad Acre Trailer Lodge, Inc.) ("Broadacre") is a Florida Corporation in Good Standing in the State of Florida and a citizen of the United States of America.

47. On July 1, 1969, Broadacre acquired fee title to that property in Sarasota County, Florida by mortgage deed recorded in the Sarasota County Recorder of Deeds' Office in the Official Records 798, Page 775. (A copy of the mortgage deed by which Broadacre acquired title to its property is attached as "Exhibit 16.")

48. Broadacre's property includes fee title to approximately 1,263 feet of property lying on the eastern side of the centerline of the abandoned SGLR right-of-way that is now subject to the easement for an interim public-access recreational trail and possible future railroad reactivation.

49. On April 2, 2004 (the NITU date), Broadacre was fee owner of this property with Parcel Identification Number 0052-11-0001. (A copy of the Sarasota County Appraiser report for this property is attached as "Exhibit 17.")

**Florida Rock Concrete, Inc.**

50. Florida Rock Concrete, Inc. ("Florida Rock") is a Florida Corporation in Good Standing in the State of Florida and a citizen of the United States of America.

51. On August 31, 2001, Florida Rock acquired fee title to property in Sarasota County, Florida by that warranty deed recorded in the Sarasota County Recorder of Deeds' Office by Instrument Number 2001172643 on November 29, 2001. (A copy of the warranty deed by which Florida Rock acquired its property is attached as "Exhibit 18.")

52. Florida Rock's property includes fee title to approximately 425 feet of property lying on the eastern side of the centerline of the abandoned SGLR right-of-way that is now subject to the easement for an interim public-access recreational trail and possible future railroad reactivation. (A copy of a survey for this property is attached as "Exhibit 19.")

53. On April 2, 2004 (the NITU date), Florida Rock was fee owner of this property with Parcel Identification Number 0097-05-0017. (A copy of the Sarasota County Property Appraiser's report for this property is attached as "Exhibit 20.")

**Kimal Lumber Company**

54. Kimal Lumber Company ("Kimal Lumber") is a Florida Corporation in Good Standing and a citizen of the United States of America.

55. On January 1, 1986, Kimal Lumber acquired fee title to property in Sarasota County, Florida by that warranty deed recorded in the Sarasota County Recorder of Deeds' Office in Original Records 1839, Page 2265. (A copy of the warranty deed by which Kimal Lumber acquired title to its property is attached as "Exhibit 21.")

56. Kimal Lumber's property includes fee title to approximately 445 feet of property lying on the eastern side of the centerline of the abandoned SGLR right-of-way that is now subject to the easement for an interim public-access recreational trail and

possible future railroad reactivation. (A copy of a survey for this property is attached as "Exhibit 22.")

57. On April 2, 2004 (the NITU date), Kimal Lumber was fee owner of this property with Parcel Identification Number 0405-03-0016. (A copy of the Sarasota County Property Appraiser's report for this property is attached as "Exhibit 23.")

**Pine Ranch East Owners Association, Inc.**

58. Pine Ranch East Owners Association, Inc. ("Pine Ranch East") is a Florida Corporation in Good Standing and a citizen of the United States of America.

59. On May 8, 1991, Pine Ranch East acquired fee title to property in Sarasota County, Florida by that general warranty deed recorded in the Sarasota County Recorder of Deeds' Office in Book 2297, Page 762. (A copy of the general warranty deed by which Pine Ranch East acquired title to its property is attached as "Exhibit 24.")

60. Pine Ranch East's property includes fee title to approximately 2,392 feet of property lying on the western side of the centerline of the abandoned SGLR right-of-way that is now subject to the easement for an interim public-access recreational trail and possible future railroad reactivation.

61. On April 2, 2004 (the NITU date), Pine Ranch East was fee owner of this property with located in Plat Book 33, Page 12. (A copy of the plat for Pine Ranch East is attached as "Exhibit 25.")

**Post Office Properties, Inc.**

62. Post Office Properties, Inc. ("Post Office Properties") is a Florida Corporation that was dissolved in 2000. Steve Allen, President of Sarasota Investment

Co., Inc., is currently acting as agent and successor for Post Office Properties with the ability under Florida law to make and enforce claims on behalf of Post Office Properties.

63. On July 1, 1994, Post Office Properties acquired fee title to property in Sarasota County, Florida by that warranty deed recorded in the Sarasota County Recorder of Deeds' Office in Book 2648, Page 981. (A copy of the warranty deed by which Post Office Properties acquired title to its property is attached as "Exhibit 26.")

64. Post Office Properties' property includes fee title to approximately 492 feet of property lying on the western side of the centerline of the abandoned SGLR right-of-way that is now subject to the easement for an interim public-access recreational trail and possible future railroad reactivation.

65. On April 2, 2004 (the NITU date), Post Office Properties was fee owner of this property with Parcel Identification Number 0070-07-0039. (A copy of the Sarasota County Appraiser report for this property is attached as "Exhibit 27.")

**Public Storage**

66. Public Storage is a Maryland real estate investment trust, successor by operation of a merger to Public Storage, Inc. and is a citizen of the United States of America.

67. Public Storage acquired fee title to its property in Sarasota County, Florida on June 27, 1996 by that warranty deed recorded on July 1, 1996 in the Sarasota County Recorder of Deeds' Office, Book 2868, Page 2691. (A copy of the warranty deed by which Public Storage acquired its property is attached as "Exhibit 28.")

68. Public Storage's property included fee title to approximately 200 feet of property lying on the eastern side of the centerline of the abandoned SGLR right-of-way

that is now subject to the easement for an interim public access trail and possible future railroad reactivation. (A copy of the survey for Public Storage's property is attached as "Exhibit 29.")

69. On April 2, 2004 (the NITU date), Public Storage was fee owner of this property with Parcel Identification Number 0428-03-0006. (A copy of the Sarasota County Appraiser's report for this property is attached as "Exhibit 30.")

**Pulte Home Corporation**

61. Pulte Home Corporation ("Pulte") is a Michigan corporation authorized to conduct (and conducting) business in the State of Florida and is a citizen of the United States of America.

62. Pulte acquired fee title to its property in Sarasota County, Florida on October 22, 2003 by that warranty deed recorded in the Sarasota County Recorder of Deeds' Office on October 23, 2003 by Instrument Number 2003215445. (A copy of the warranty deed by which Pulte acquired title to its property is attached as "Exhibit 31.")

63. Pulte's property included fee title to approximately 2,572 feet of property lying on the western side of the centerline of the abandoned SGLR right-of-way that is now subject to the easement for an interim public-access recreational trail and possible future railroad reactivation. (A copy of a survey for the property formerly owned by Pulte is attached as "Exhibit 32.")

64. On April 2, 2004 (the NITU date), Pulte was fee owner of this property with Parcel Identification Number 0115-04-0001.

65. Pulte subsequently sold this property to Arielle on Palmer Ranch Community Association, Inc. on December 23, 2005. (A copy of the quit claim deed conveyed by Pulte Home is attached as "Exhibit 33.")

**Sarasota Investment Company, Inc.**

66. Sarasota Investment Company, Inc. ("SIC") is a Florida Corporation in Good Standing and a citizen of the United States of America.

67. On June 26, 1979, SIC acquired fee title to that property in Sarasota County, Florida by warranty deed recorded in the Sarasota County Recorder of Deeds' Office on June 28, 1979 in the Official Records 1314, Page 1306. (A copy of the warranty deed by which SIC acquired title to its property is attached as "Exhibit 34.")

68. SIC's property includes fee title to approximately 184 feet of property lying on the western side of the centerline of the abandoned SGLR right-of-way that is now subject to the easement for an interim public-access recreational trail and possible future railroad reactivation.

69. On April 2, 2004 (the NITU date), SIC was fee owner of this property with Parcel Identification Number 0070-07-0059. (A copy of the Sarasota County Appraiser report for this property is attached as "Exhibit 35.")

**Southern Spring & Stamping, Inc.**

70. Southern Spring & Stamping, Inc. ("Southern Spring") is a Florida Corporation in Good Standing and a citizen of the United States of America.

71. On September 1, 1957, Southern Spring acquired fee title to that property in Sarasota County, Florida by that indenture recorded in the Sarasota County Recorder

of Deeds' Office on November 22, 1957 in the Official Records 64, Page 147. (A copy of the indenture by which Southern Spring acquired its property is attached as "Exhibit 36.")

72. Southern Spring's property includes fee title to approximately 700 feet of property lying on the eastern side of the centerline of the abandoned SGLR right-of-way that is now subject to the easement for an interim public-access recreational trail and possible future railroad reactivation.

73. On April 2, 2004 (the NITU date), Southern Spring was fee owner of this property with Parcel Identification Number 0407-07-0001. (A copy of the Sarasota County Appraisal report for this property is attached as "Exhibit 37.")

**Stoneybrook Golf & Country Club of Sarasota, Inc.**

74. Stoneybrook Golf & Country Club of Sarasota, Inc. ("Stoneybrook") is a Florida Corporation in Good Standing and a citizen of the United States of America.

75. On August 8, 1998, Stoneybrook acquired fee title to that property in Sarasota County, Florida recorded by special warranty deed in the Sarasota County Recorder of Deeds' Office on August 6, 1998 by Instrument number 1998105025. (A copy of the special warranty deed by which Stoneybrook acquired its property is attached as "Exhibit 38.")

76. Stoneybrook's property includes fee title to over 3,000 feet of property lying on the western side of the centerline of the abandoned SGLR right-of-way that is now subject to the easement for an interim public-access recreational trail and possible future railroad reactivation.

77. On April 2, 2004 (the NITU date), Stoneybrook was fee owner of this property with Parcel Identification Number 0134-04-0001. (A copy of the Sarasota County Appraisal report for this property is attached as "Exhibit 39.")

**Tournament Players Club at Prestancia, Inc.**

78. Tournament Players Club at Prestancia, Inc. ("TPC") is a Florida Corporation in Good Standing and a citizen of the United States of America.

79. TPC acquired its property in Sarasota County, Florida on January 29, 1992, by that warranty deed recorded in the Sarasota County Recorder of Deeds' Office on January 29, 1992, in Book 2392, Page 1931. (A copy of the warranty deed by which TPC acquired its property is attached as "Exhibit 40.")

80. TPC's property includes fee title to approximately 4,800 feet of property lying on the western side of the centerline of the abandoned SGLR right-of-way that is now subject to the easement for an interim public-access recreational trail and possible future railroad reactivation.

81. On April 2, 2004 (the NITU date), TPC was fee owner of this property with Parcel Identification Number 0113-01-0100. (A copy of the Sarasota County Appraisal report for this property is attached as "Exhibit 41.")

**Trinity Chapel of Sarasota, Inc.**

82. Trinity Chapel of Sarasota, Inc. (formerly known as Trinity Church of God of Sarasota, Inc.) ("Trinity Chapel") is a Florida Corporation in Good Standing in the State of Florida and a citizen of the United States of America.

83. On February 15, 1978, Trinity Chapel acquired fee title to that property in Sarasota County, Florida by that indenture recorded in the Sarasota County Recorder of

Deeds' Office in Official Records 1221, Page 1512. (A copy of the indenture by which Trinity Chapel acquired title to its property is attached as "Exhibit 42.")

84. Trinity Chapel's property includes fee title to approximately 457 feet of property lying on the western side of the centerline of the abandoned SGLR right-of-way that is now subject to the easement for an interim public-access recreational trail and possible future railroad reactivation.

85. On April 2, 2004 (the NITU date), Trinity Chapel was fee owner of this property with Parcel Identification Number 0060-14-0076. (A copy of the Sarasota County Appraisal report for this property is attached as "Exhibit 43.")

**Triple Diamond Commercial Properties, LLC**

86. Triple Diamond Commercial Properties, LLC ("TDCP") is a Limited Liability Corporation in Good Standing in the State of Florida and a citizen of the United States of America.

87. On May 1, 2002, TDCP acquired fee title to that property in Sarasota County, Florida by that warranty deed recorded in the Sarasota County Recorder of Deeds' Office by Instrument Number 2002081911 recorded on May 20, 2002. (A copy of the warranty deed by which TDCP acquired title to its property is attached as "Exhibit 44.")

88. TDCP's property includes fee title to approximately 700 feet of property lying on the western side of the centerline of the abandoned SGLR right-of-way that is now subject to the easement for an interim public-access recreational trail and possible future railroad reactivation.

89. On April 2, 2004 (the NITU date), TDCP was fee owner of this property with Parcel Identification Number 0406-11-0007. (A copy of the Sarasota County Appraisal report for this property is attached as "Exhibit 45.")

**Venice Plaza Ltd.**

90. Venice Plaza, Ltd. ("Venice Plaza") is a Florida Limited Partnership in Good Standing in the State of Florida and a citizen of the United States of America.

91. On February 14, 1996, Venice Plaza acquired fee title to that property in Sarasota County, Florida by that special warranty deed recorded in the Sarasota County Recorder of Deeds' Office in Book 2822, Page 1733. (A copy of the special warranty deed by which Venice Plaza acquired title to its property is attached as "Exhibit 46.")

92. Venice Plaza's property includes fee title to approximately 760 feet of property lying on the eastern side of the centerline of the abandoned SGLR right-of-way that is now subject to the easement for an interim public access trail and possible future railroad reactivation. (A copy of a survey for Venice Plaza's property is attached as "Exhibit 47.")

93. On April 2, 2004 (the NITU date), Venice Plaza was fee owner of this property with Parcel Identification Number 0407-02-0001. (A copy of the Sarasota County Appraisal report for this property is attached as "Exhibit 48.")

**West Coast Inland Navigation District**

94. West Coast Inland Navigation District ("WCIND") was created by a special act of the Florida Legislature in 1947 to serve as the "local sponsor" for the Intracoastal Waterway that was constructed through the counties of Sarasota, Manatee, Charlotte, and Lee.

95. WCIND acquired title to its property in Sarasota County, Florida by a federal Order of Taking, Law No. 6871 on December 18, 1964. (A copy of the WCIND official right-of-way maps are attached collectively as "Exhibit 49.")

96. WCIND's property includes fee title to approximately 556 feet of property lying on the western side of the centerline of the abandoned SGLR right-of-way that is now subject to the easement for an interim public-access recreational trail and possible future railroad reactivation. (A copy of a survey for WCIND's property is attached as "Exhibit 50.")

97. WCIND was fee owner of this property with Parcel Identification Number 0407-11-0007 on April 2, 2004 (the date of the NITU). (A copy of the Sarasota County Appraiser's report for this property is attached as "Exhibit 51.")

**Louis L. Alderman**

98. Louis L. Alderman is a resident of the State of Florida and a citizen of the United States of America.

99. Mr. Alderman and his wife, Lilli I. Alderman, acquired fee title to their home in Sarasota County, Florida on April 14, 1980 by that quit-claim deed recorded on April 16, 1980 in the Sarasota County Recorder of Deeds' Office in Original Records 1366, Page 1579. (A copy of the quit-claim deed by which the Aldermans acquired title to their home is attached as "Exhibit 52.") Ms. Alderman died on April 19, 1983. (A copy of Ms. Alderman's death certificate is attached as "Exhibit 53.") On April 2, 2004, Mr. Alderman was the sole owner of this property.

100. Mr. Alderman's property includes fee title to approximately 697 feet of property lying on the western side of the centerline of the abandoned SGLR right-of-way

that is now subject to the easement for an interim public-access recreational trail and possible future railroad reactivation. (A copy of a survey for Mr. Alderman's property is attached as "Exhibit 54.")

101. Mr. Alderman was fee owner of this property with Parcel Identification Number 0071-09-0002 on April 2, 2004 (the date of the NITU). (A copy of the Sarasota County Appraiser's report for this property is attached as "Exhibit 55.")

**Alexandrine Boswell**

102. Alexandrine Boswell is a resident and citizen of the State of Florida and the United States of America.

103. Ms. Boswell acquired fee title to her property in Sarasota County, Florida on December 2, 1970 by that warranty deed recorded in the Sarasota County Recorder of Deeds' Office on December 2, 1970 in Sarasota County Official Records 868, Page 832. (A copy of the deed by which Ms. Boswell acquired her property is attached as "Exhibit 56.")

104. Ms. Boswell's property includes fee title to approximately 800 feet of property lying on the western side of the centerline of the abandoned SGLR right-of-way that is now subject to the easement for an interim public-access recreational trail and possible future railroad reactivation.

105. Ms. Boswell's property was subsequently sub-divided into Parcel Identification Numbers 0061-03-0002 and 0061-03-0004. Ms. Boswell was fee owner of both of these properties on April 2, 2004 (the date of the NITU). (A copy of the Sarasota County Appraiser reports are attached respectively as "Exhibit 57" and Exhibit 58.")

**Ann Converse, Susan J. Beltran, Cathy C. Siano, and Sandy Chestnutt**

106. Ann Converse, Susan J. Beltran, and Sandy Chestnutt are a residents and citizens of the State of Florida and the United States of America. Cathy C. Siano is a resident of the State of Ohio and the United States of America.

107. Gino L. Cantele and Audrey H. Cantele, as Co-Trustees of the Gino L. Cantele and Audrey H. Cantele Revocable Living Trust Agreement dated September 28 ("Cantele Living Trust"), 1994, acquired fee title to their property in Sarasota County, Florida on May 30, 2002, by that special warranty deed recorded by Instrument Number 2002096399 on June 13, 2002. (A copy of the special warranty deed by which the Cantele's acquired title to their property is attached as "Exhibit 59.")

108. On June 2, 2004, Gino L. Cantele died, leaving Audrey H. Cantele as the Personal Representative of the Estate of Mr. Cantele and the Trustee of the Cantele Living Trust. (A copy of Mr. Cantele's death certificate is attached as "Exhibit 60.")

109. Ms. Converse, Ms. Beltran, Ms. Chestnutt, and Ms. Siano are the children of Mr. Cantele ("children").

110. According to the terms of the Cantele Living Trust, upon the death of Mr. Cantele, the assets of the his trust were to be distributed with 20% going to each of the four children and 20% going to Ms. Cantele. (A copy of the Cantele Living Trust is attached as "Exhibit 61.")

111. On August 24, 2006, Ms. Converse accepted her appointment as Successor Personal Representative of Mr. Cantele's Estate and as Successor Trustee of the Cantele Living Trust. (A copy of Ms. Converse's Acceptance by Successor Personal

Representative is attached as "Exhibit 62" and a copy of Ms. Converse's Acceptance by Successor Trustee is attached as "Exhibit 63.")

112. On October 7, 2006, Ms. Cantele resigned as Personal Representative of the Mr. Cantele's Estate and as Trustee of the Cantele Living Trust. (A copy of Ms. Cantele's Resignation as Personal Representative is attached as "Exhibit 64" and a copy of Ms. Cantele's Resignation as Trustee is attached as Exhibit 65.")

113. On October 31, 2006, Ms. Cantele and the four children entered into a Settlement Agreement whereby Ms. Cantele agreed to resign as personal representative of Mr. Cantele's estate and as trustee of the Cantele Living Trust. This Agreement also provided that the children would buy Ms. Cantele's interest in the trust and Mr. Cantele's Estate. (A copy of this Settlement Agreement is attached as "Exhibit 66.")

114. The four children, Ms. Converse, Ms. Beltran, Ms. Chestnutt, and Ms. Siano are the successor beneficiaries of the Gino L. Cantele and Audrey H. Cantele Revocable Living Trust Agreement dated September 28.

115. The Cantele Living Trust's property included fee title to approximately 394 feet of property lying on the western side of the centerline of the abandoned SGLR right-of-way that is now subject to the easement for an interim public access trail and possible future railroad reactivation.

116. The Cantele Living Trust was fee owner of this property with Parcel Identification Number 0097-04-0016 on April 2, 2004 (date of the NITU).

117. As successor beneficiaries to the Cantele Living Trust, Ms. Converse, Ms. Beltran, and Ms. Chestnutt each conveyed an undivided one-fourth (1/4) interest in the

property to Canco, LLC on February 16, 2007. (A copy of the warranty deed by which Canco, LLC acquired title to this property is attached as "Exhibit 67.")

118. This property, Parcel Identification Number 0097-04-0016, is currently owned by Canco, LLC (three-fourths interest) and Cathy C. Siano (one-fourth interest). (A copy of the Sarasota County Appraiser report for this property is attached as "Exhibit 68.")

**Patricia M. Davids**

119. Patricia M. Davids is a resident and citizen of the State of Florida and the United States of America.

120. Ms. Davids' father, R.J. Martindale, originally acquired property in Sarasota County, Florida on August 8, 1944 by that deed recorded in the Sarasota County Recorder of Deeds' Office as Deed 191, Page 489. (A copy of the deed by which Mr. Martindale acquired title to the property is attached as "Exhibit 69.") On April 27, 1955, Mr. Martindale transferred title to himself and Lucile Martindale (Ms. Davids' mother), as husband and wife, by that indenture recorded in the Sarasota County Recorder of Deeds' Office in Book 348, Page 83. (A copy of this indenture is attached as "Exhibit 70.") Ms. Davids subsequently acquired title to this property on April 1, 1977 after her mother's death.

121. Ms. David's property includes fee title to approximately 700 feet of property lying on the western side of the centerline of the abandoned SGLR right-of-way that is now subject to the easement for an interim public-access recreational trail and possible future railroad reactivation.

122. Ms. Davids was fee owner of this property with Parcel Identification Number 0165-09-0032 on April 2, 2004 (the date of the NITU). (A copy of the Sarasota County Appraiser's report for this property is attached as "Exhibit 71.")

**Dee A. Deaterly**

123. Dee A. Deaterly is a resident and citizen of the State of Florida and the United States of America.

124. On September 26, 1998, Ms. Deaterly acquired her property in Sarasota County, Florida by a series of three deeds (for a single property with Parcel Identification Number 0407-10-0012): (1) that trustee's deed recorded in the Sarasota County Recorder of Deeds' Office in Book 2244, Page 1425 on September 28, 1990; (2) that warranty deed recorded in the Sarasota County Recorder of Deeds' Office in Book 2244, Page 1424 on September 28, 1990; and (3) that quit-claim deed recorded in the Sarasota County Recorder of Deeds' Office in Book 2244, Page 1433 on September 28, 1990. (A copy of the three deeds by which Ms. Deaterly acquired her property are attached respectively as "Exhibit 72," "Exhibit 73," and "Exhibit 74.")

125. Ms. Deaterly's property includes fee title to approximately 700 feet of property lying on the eastern side of the centerline of the abandoned SGLR right-of-way that is now subject to the easement for an interim public access trail and possible future railroad reactivation. (A copy of a map for Ms. Deaterly's property is attached as "Exhibit 75.")

126. Ms. Deaterly was fee owner of this property with Parcel Identification Number 0407-10-0012 on April 2, 2004 (the date of the NITU). (A copy of the Sarasota County Appraiser's report for this property is attached as "Exhibit 76.")

**Kelly A. Glausman**

128. Kelly A. Glausman is a resident and citizen of the State of Florida and the United States of America.

128. Mr. Glausman acquired his property in Sarasota County, Florida on July 5, 1996, by that tax deed recorded in the Sarasota County Recorder of Deeds' Office on July 5, 1996 in Book 2871, Page 170. (A copy of the tax deed by which Mr. Glausman acquired his property is attached as "Exhibit 77.")

129. Mr. Glausman's property includes fee title to approximately 400 feet of property lying on the eastern side of the centerline of the abandoned SGLR right-of-way that is now subject to the easement for an interim public access trail and possible future railroad reactivation. (A copy of a map for Mr. Glausman's property is attached as "Exhibit 78.")

130. Mr. Glausman was fee owner of this property with Parcel Identification Number 0406-02-0001 on April 2, 2004 (date of the NITU). (A copy of the Sarasota County Appraiser's report for this property is attached as "Exhibit 79.")

**Jay Hardy**

131. Jay Hardy is a resident and citizen of the State of Texas and the United States of America.

132. Mr. Hardy acquired his property in Sarasota County, Florida on January 26, 1959 by that deed recorded on January 7, 1960, in Plat Book 11, Pages 2, 2A and 2B. (A copy of the Indenture by which Mr. Hardy acquired his property is included as "Exhibit 80.")

133. Ms. Hardy's property includes fee title to approximately 375 feet of property lying on the eastern side of the centerline of the abandoned SGLR right-of-way that is now subject to the easement for an interim public access trail and possible future railroad reactivation.

134. Mr. Hardy was fee owner of this property with Parcel Identification number 0164-09-0003 on April 2, 2004 (date of the NITU). (A copy of the Sarasota County Appraiser's report for this property is attached as "Exhibit 81.")

**Faye Howard**

135. Faye Howard is a resident and citizen of the State of Florida and the United States of America.

136. Ms. Howard acquired her home in Sarasota County, Florida on July 16, 200, by that deed recorded on August 11, 2003, Instrument Number 2003160791. (A copy of the Personal Representative's Deed by which Ms. Howard acquired her home is attached as "Exhibit 82.")

137. Ms. Howard's property includes fee title to approximately 1,355 feet of property lying on the western side of the centerline of the abandoned SGLR right-of-way that is now subject to the easement for an interim public-access recreational trail and possible future railroad reactivation.

138. Ms. Howard was fee owner of this property (with Parcel Identification number 0164-09-0006 on April 2, 2004 (date of the NITU). (A copy of the Sarasota County Appraiser report for this property is attached as "Exhibit 83.")

**Ronald Miller and M&H Corporation**

139. Ronald Miller is a resident and citizen of the State of Florida and the United States of America. Mr. Miller is the former vice president of M&H Corporation, an Ohio corporation, which has since dissolved.

140. Mr. Miller and M&H Corporation acquired title to property in Sarasota County, Florida on May 24, 1977, by that warranty deed recorded in the Sarasota County Recorder of Deeds' Office in Official Records 1183, Page 690. (A copy of the warranty deed by which Mr. Miller and M&H Corporation acquired their property is attached as "Exhibit 84.")

141. Mr. Miller and M&H Corporation's property included fee title to approximately 922 feet of property lying on the western side of the centerline of the abandoned SGLR right-of-way that is now subject to the easement for an interim public access recreational trail and possible future railroad reactivation. (A copy of a survey for this property is attached as "Exhibit 85.")

142. Mr. Miller and M&H Corporation were fee owners of this property with Parcel Identification Number 0061-15-0001 on April 2, 2004 (the date of the NITU). (A copy of the 2004 Sarasota County tax record for this property is attached as "Exhibit 86.")

143. Mr. Miller and M&H Corporation subsequently sold this property to Phillippi Pines, LLC, on August 31, 2004 by that warranty deed recorded in the Sarasota County Recorder of Deeds' Office on September 1, 2004 by Instrument Number 2004171125. (A copy of the warranty deed by which Phillippi Pines acquired this property is attached as "Exhibit 87.")

144. This property was subsequently sub-divided into six properties bearing the following Parcel Identification Numbers: 0061-15-0086, 0061-15-0087, 0061-15-0088, 0061-15-0089, 0061-15-0090, and 0061-15-0091. (A copy of the Sarasota County Appraiser reports for these six properties are attached collectively as "Exhibit 88.")

**Ilene Mirman**

145. Ilene Mirman is a resident and citizen of the State of Florida and the United States of America.

146. Ms. Mirman acquired her property in Sarasota County, Florida on March 31, 1999 by that warranty deed recorded in the Sarasota County Recorder of Deeds' Office on March 31, 1999 by Instrument Number 1999043615. (A copy of the warranty deed by which Ms. Mirman acquired her property is attached as "Exhibit 89.")

147. Ms. Mirman's property includes fee title to approximately 678 feet of property lying on the western side of the centerline of the abandoned SGLR right-of-way that is now subject to the easement for an interim public-access recreational trail and possible future railroad reactivation.

148. Ms. Mirman was fee owner of this property with Parcel Identification Number 0165-01-0007 on April 2, 2004 (the date of the NITU). (A copy of the Sarasota County Property Appraiser's report for this property is attached as "Exhibit 90.")

**Kenneth S. Patton**

149. Kenneth S. Patton is a resident and citizen of the State of Florida and the United States of America.

150. Mr. Patton's mother, Maxine A. Patton, acquired title to property[3] in Sarasota County, Florida ("the property") prior to her death on September 13, 1963. (A copy of the record of death of Ms. Patton is attached as "Exhibit 92.") As the sole beneficiaries under the will of Maxine A. Patton, Charlotte Patton Reed, Kenneth Stuart Patton, III, and Old Colony Trust Company, as guardian for James Gordon Patton, each inherited a one-third interest in the property. (*See id.*) On January 1, 1984, Charlotte Patton Reed conveyed her one-third interest in the property to Mr. Patton. (A copy of the fee simple deed by which Ms. Reed conveyed her interest in this property to Mr. Patton, recorded in the Sarasota County, Florida Original Records 1654, Page 0508, is attached as "Exhibit 93.") On January 7, 1985, James G. Patton and Beverly Patton conveyed their one-third interest in the property to Kenneth S. Patton and Grace E. Patton. (A copy of this warranty deed by which Kenneth S. Patton and Grace E. Patton acquired an additional one-third interest in this property is recorded in the Sarasota County, Florida Original Records 1754, Page 1681, and is attached as "Exhibit 94.") As of January 7, 1985, Kenneth Patton owned 100% interest in the property.

151. Mr. Patton's property includes fee title to approximately 453 feet of property lying on the western side of the centerline of the abandoned SGLR right-of-way that is now subject to the easement for an interim public access trail and possible future railroad reactivation.

---

[3] This property is described as "real property in Laurel, Sarasota County, Florida, in Section 31, Twp. 38 South, Range 19 East, Containing approximately 8 acres of upland and 2 acres of submerged land." (A copy of the Receipt of the Estate of Maxine A. Patton, Deceased, is attached as "Exhibit 91.")

152. Mr. Patton was fee owner of this property with Parcel Identification number 0384-05-0001 on April 2, 2004 (the date of the NITU). (A copy of the Sarasota County Appraiser report for this property is attached as "Exhibit 95.")

**Sharon L. Wilkie and the James H. Wilkie Estate**

153. Sharon L. Wilkie is a resident and citizen of the State of Oklahoma and the United States of America.

154. Ms. Wilkie, and her husband, James H. Wilkie, acquired their property in Sarasota County, Florida on February 28, 1977, by that warranty deed recorded in the Sarasota County Recorder of Deeds' Office in Official Records 1166, Page 1079. (A copy of this warranty deed is attached as "Exhibit 96.") On June 28, 1988, Mr. and Mrs. Wilkie executed a warranty deed, Original Records 2043, Page 1153, transferring title of their property to James H. Wilkie as Trustee and Sharon L. Wilkie as Successor Trustee. (A copy of this warranty deed is attached as "Exhibit 97.") Mr. Wilkie died on January 30, 1989. (A copy of Mr. Wilkie's death certificate is attached as "Exhibit 98.") On October 16, 1990, Sharon L. Wilkie, as Successor Trustee transferred an undivided 23.73% interest in the property to herself individually. (A copy of this indenture is attached as "Exhibit 99.") On April 2, 2004, the property was owned by Mr. Wilkie's Estate (76.27%) and Mrs. Wilkie (23.73%).

155. The Wilkies' property includes fee title to approximately 153 feet of property lying on the eastern side of the centerline of the abandoned SGLR right-of-way that is now subject to the easement for an interim public access trail and possible future railroad reactivation.

156. The Wilkies were fees owners of this property with Parcel Identification number 0070-02-0027 on April 2, 2004 (the date of the NITU). (A copy of the Sarasota County Appraiser report for this property is attached as "Exhibit 100.")

**Robert L. Williams**

157. Robert L. Williams is a resident and citizen of the State of Florida and the United States of America.

158. Mr. Williams acquired his property in Sarasota County, Florida on September 6, 2001, by that quit-claim deed recorded in the Sarasota County Recorder of Deeds' Office on September 18, 2001, by Instrument Number 2001133675. (A copy of the quit-claim deed by which Mr. Williams acquired his property is attached as "Exhibit 101.")

159. Mr. Williams' property includes fee title to approximately 1,200 feet of property lying on the eastern side of the centerline of the abandoned SGLR right-of-way that is now subject to the easement for an interim public-access recreational trail and possible future railroad reactivation.

160. Mr. Williams was fee owner of this property with Parcel Identification Number 0383-04-0002 on April 2, 2004.

161. On August 25, 2004, Mr. Williams sold his property to MTH Associates, LLC. (A copy of the current Sarasota County Appraiser's report for this property showing the August 25, 2004, conveyance is attached as "Exhibit 102.")

**The United States of America**

162. The Defendant is the United States of America.

**THE TRAILS ACT IS A TAKING OF THE PLAINTIFFS' PROPERTY BY THE FEDERAL GOVERNMENT**

163. Part of the property owned in fee by each of the Plaintiffs was formerly subject to an easement for railway purposes. This railroad easement provided that the Seaboard Air Line Railway and its successor railroads could use the designated portion of the Plaintiffs' land for the purpose of operating an active railroad.

164. The easement did not provide the Seaboard Air Line Railway, or any other person or entity, the right to use the Plaintiff's property for a public access recreational trail.

165. It is long-settled Florida law that a grant of property to a railroad for a right-of-way is not a grant of fee title but only an easement for use of the property to operate a railroad. "'A right of way for a railroad is only an easement though it be conveyed by deed...' " *Van Ness v. Royal Phosphate Co.*, 60 Fla. 284, 53 So. 381 (Fla. 1910) (citing, *Brown v. Young*, 67 Iowa 625, 29 N.W. 941.)

166. Should the railroad abandon operation of a railroad over the property upon which the right-of-way easement has been granted, the property "reverts" to the fee owner and the fee owner's property is unencumbered by any easement for current or future railroad use. See, *Seaboard Airline Ry. V. Southern Inv. Co.* 53 Fla. 832, 44 So. 351 (Fla. 1907) and *Canal Authority of Florida v. Mainer*, 440 So. 2d 1304 (Fla. App, 1983).

167. The railroad easement was expressly limited to use of the property as and for a right-of-way for the purpose of operating an active railroad and provided that, "if at any time thereafter the said Seaboard Air Line Railway shall abandon said line for railroad purposes then the above described pieces and parcels of land shall *ipso facto*

revert to and again become the property of the undersigned, his heirs, administrators and assigns." (See, Exhibit A, *Supra.*)

168. Under the terms of the relevant easement and under Florida law, when the SGLR railroad abandoned operation of a railroad over the Plaintiffs' property, the easement was abandoned and the Plaintiffs' regained the right to use and possess their property free of any easement.

169. The Trails Act allows the conversion of abandoned railroad rights-of-way for use as interim public access recreational trails and preserves the right-of-way for possible future reactivation as a railroad. The Trails Act further provides that such conversion to trail use "shall not be treated, for purposes of any law or rule of law, as an abandonment of the use of such rights-of-way for railroad purposes" 16 U.S.C § 1247 (d).

170. The Plaintiffs property had never – at any time – been subject to an easement allowing the public to use the Plaintiff's property for a recreational trail.

171. The Plaintiffs' property has never been subject to a general right of the public to cross or make use of the Plaintiffs' property for any purpose.

172. Any easement for operation of a railroad across the Plaintiffs' property had been abandoned and the Plaintiffs' enjoyed under Florida law the right to use and occupy their property free of any present or future easement for operation of a railroad across their land.

173. The federal government, through operation of the Trails Act and issuance of the NITU has: (a) forestalled or taken from the Plaintiffs' their state law "reversionary" right to their property; (b) appropriated an easement across the Plaintiffs' property for an

interim public access recreational trail, and (c) appropriated an easement for a potential future railroad right-of-way across the Plaintiff's property; and, (d) has taken from the Plaintiffs' the rights they enjoy under the Florida Constitution and Florida law to the exclusive use and physical occupation of their land.

174. Pursuant to the decision of the Federal Circuit in *Caldwell v. United States*, 391 F.3d 1226 (Fed. Cir. 2004) and *Barclay v. United States*, 443 F.3d 1368 (Fed. Cir. 2006), this taking of the Plaintiffs' property occurred when the STB issued the NITU on April 2, 2004.

175. According to the Federal Circuit, the date upon which the value of the property taken from each Plaintiff is to be established is the date of the NITU which is April 2, 2004.

176. The United States has neither instituted any condemnation proceeding against Plaintiffs, nor paid, nor offered to pay, the Plaintiffs' for the property it has taken from them.

## SPECIFIC CLAIM FOR RELIEF

## COUNT ONE

### A Claim For "Just Compensation" For The Permanent Physical Taking Of The Plaintiffs Whose Property Is Subject To The NITU

177. Plaintiffs hereby re-allege and incorporate by reference the allegations set forth in paragraphs 1 through 176 of this complaint.

178. The United States of America is a Republic and the actions and laws of the federal government are subject to the Constitution of the United States.

179. The Fifth Amendment to the Constitution of the United States provides that, "No person shall be . . . deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation."

180. The Fifth Amendment prohibits the United States from taking private property from a citizen without paying that citizen "just compensation".

181. The Fifth Amendment requirement of paying "just compensation" to a property owner from whom the government takes property includes the obligation of the government to pay the property owner: (a) the fair market value for the property taken as of the date it was appropriated by the federal government -- this fair market value includes not only the value of the land actually physically confiscated but also any "severance damages" or loss in value to the property owner's entire parcel caused by the government's taking, (b) payment of an additional amount of delay damages necessary to compensate the property owner for the government's delay in paying the property owner "just compensation."

182. According to the Federal Circuit, the "date of taking" upon which the government's obligation to pay delay damages begins to run is the date of the NITU which, in this case, is April 2, 2004.

183. The Tucker Act, 28 U.S.C. § 1491(a)(1) provides in relevant part, "The United States Court of Federal Claims shall have jurisdiction to render judgment on any claim against the United States founded upon the Constitution."

184. The Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. §4654 (c) provides that just compensation includes. "reasonable costs, disbursements and expenses, including reasonable attorney, appraisal and engineering fees, actually incurred because of [the] proceeding."

185. The actions of the United States have resulted in the taking of Plaintiffs' property, by reason of the direct physical taking of Plaintiffs' property and by reason of the damage to Plaintiffs' remaining adjacent property which has suffered a loss of privacy and other severance damages as a result of the proximity of the public on the adjoining trail. The remaining property is also less valuable by reason of being divided into a smaller parcel by reason of the easement for trail use and adjoining an easement for possible future railroad use.

**SPECIFIC RELIEF REQUESTED**

1. Plaintiffs respectfully request a judgment in favor of Plaintiffs:

2. Awarding Plaintiffs the full fair market value of the property taken by the government on the date it was taken (including any "severance damages" suffered by the Plaintiff in loss of value to the Plaintiffs' remaining property not actually physically taken but affected by the taking);

3. Compensation for the delay between the date of the government's taking of the Plaintiffs' property (which is the date of the NITU according to the Federal Circuit's opinion in *Caldwell v. United States*, 319 F.3d 1226 (Fed. Cir. 2004)) and the actual date when the government finally pays "just compensation" to the Plaintiffs;

4. Paying the Plaintiffs' costs and attorneys' fees incurred pursuant to The Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. §4654 (c)(2000) which provides that just compensation includes, "reasonable costs, disbursements and expenses, including reasonable attorney, appraisal and engineering fees, actually incurred because of [the] proceeding."

5. Such further relief as this Court may deem just and proper.

Respectfully submitted,

LATHROP & GAGE, L.C.

Date: March 20, 2008

By: /s/ Mark F. (Thor) Hearne, II
MARK F. (THOR) HEARNE, II
LINDSAY S.C. BRINTON
MEGHAN S. LARGENT
The Equitable Building
10 South Broadway, Suite 1300
St. Louis, MO 63102-1708
Telephone: (314) 613-2500
Facsimile: (314) 613-2550
(Mailing Address)

Franklin Square, Suite 1050 East
1300 Eye Street, NW
Washington, D.C. 20005
Telephone: (202) 962-0032
Facsimile: (202) 962-0357

Attorney for Plaintiffs