**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| BAY PLAZA, LLC., et al., | ) | |
| | ) | No. 08-198 |
| Plaintiffs, | ) | |
| | ) | Hon. Lawrence M. Baskir |
| vs. | ) | |
| | ) | ADR Judge: Marian Blank Horn |
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFFS' PROPOSED FINDINGS OF UNCONTROVERTED FACT**

COME NOW, Plaintiffs, by and through their undersigned counsel, and pursuant to RCFC 56 (d)(1) file with this Court their Proposed Findings of Uncontroverted Fact in Support of their Motion for Partial Summary Judgment in favor of Plaintiffs and adverse to and against the U.S. Government on the issue of the federal government's liability for taking the Plaintiffs' property by operation of the Trails Act (16 U.S.C. § 1241) without paying "just compensation" as required by the Fifth Amendment to the United States Constitution. For its Proposed Findings of Uncontroverted Fact Plaintiffs state as follows:



STLDOCS 215600v1

**(A) In 1910, eight property owners granted the Seaboard Air Line Railway ("Seaboard") easements for a right-of-way upon which to operate a railroad across their property. These easements expressly limited the right to use the property to the operation of a railroad. It was on the basis of these grants of an easement that the Seaboard constructed the approximately twelve and one-half mile long railroad line between Sarasota, Florida and Venice, Florida.**

1. The majority of the easement was acquired by Seaboard from the Potter family, namely, Potter Palmer, Jr., and Adrian C. Honore, as well as Sarah O. Webber. (*See* Tab 1, Tab 2, and Tab 3).

2. Tab 1 represents a true and accurate copy of the easement conveyance granted from Potter Palmer, Jr. and Pauline K. Palmer ("the Palmers") to the Seaboard Air Line Railway, signed November 10, 1910 and recorded with the Sarasota County Recorder of Deeds' Office.

3. The express purpose of the easement conveyed by the Palmers to the Seaboard was for operation of a railroad, providing that the Palmers,

> hereby remise, release and forever quitclaim unto the SEABOARD AIR LINE RAILWAY, a corporation of the State of Virginia and other States, **a right-of-way for railroad purposes** over and across the following described parcel of land.

(*See* Tab 1, easement granted by the Palmers to the Seaboard) (emphasis added).

4. The easement further provided that if the Seaboard Air Line Railway abandoned the easement, it was to *ipso facto* revert back to the Palmers, their heirs, administrators and assigns, stating that,

> [t]his conveyance is made upon the express condition, however, that if the Seaboard Airline Railway shall not construct upon said land and commence the operation thereon with (sic) one year of the date hereof of a line of railroad, or, **if at any time thereafter the said Seaboard Air Line Railway shall abandon said line for railroad purposes then the above described pieces and parcels of land shall *ipso facto* revert to and**

> **again become the property of the undersigned, his heirs, administrators and assigns.**

(*See* Tab 1, easement granted by the Palmers to the Seaboard) (emphasis added).

5. According to the legal description in the easement from the Palmers to the Seaboard, the easement covers approximately 1.15 acres. (*See* Tab 1, easement granted by the Palmers to the Seaboard).

6. Tab 2 represents a true and accurate copy of the easement conveyance granted from Adrian C. Honore to the Seaboard Air Line Railway, signed November 5, 1910 and recorded with the Sarasota County Recorder of Deeds' Office.

7. The express purpose of the easement conveyed by Adrian C. Honore to the Seaboard was for operation of a railroad, providing that Mr. Honore,

> hereby remise[s], release[s] and forever quitclaim[s] unto the SEABOARD AIR LINE RAILWAY, a corporation of the State of Virginia and other States, **a right-of-way for railroad purposes** over and across the following described parcel of land.

(*See* Tab 2, easement granted by Adrian C. Honore to the Seaboard) (emphasis added).

8. The easement further provided that if the Seaboard Air Line Railway abandoned the easement, it was to *ipso facto* revert back to Adrian C. Honore, his heirs, administrators and assigns, stating that,

> [t]his conveyance is made upon the express condition, however, that if the Seaboard Airline Railway shall not construct upon said land and commence the operation thereon with (sic) one year of the date hereof of a line of railroad, or, **if at any time thereafter the said Seaboard Air Line Railway shall abandon said line for railroad purposes then the above described pieces and parcels of land shall *ipso facto* revert to and again become the property of the undersigned, his heirs, administrators and assigns.**

(*See* Tab 2, easement granted by Mr. Honore to the Seaboard) (emphasis added).

9. According to the legal description in the easement from Mr. Honore to the Seaboard, the easement covers approximately 128 acres. (*See* Tab 2, easement granted by Adrian C. Honore to the Seaboard).

10. Tab 3 represents a true and accurate copy of the easement conveyance dated June 21, 1911 and granted by Sarah O. Webber to the Seaboard Air Line Railway and recorded with the Sarasota County Recorder of Deeds' Office.

11. The express purpose of the easement conveyed by Sarah O. Webber to the Seaboard was for purposes of a railroad, and in the event it was no longer used for such purposes, it was to revert *ipso facto* to Sarah O. Webber, her executors, administrators, and assigns, stating that,

> [it] is understood and agreed that if the said premises shall hereafter be abandoned by the said party of the second part its successors or assigns for railroad purposes in that event the said premises shall *ipso facto* revert to the part of the first part whereas executors, administrators, and assigns.

(*See* Tab 3, easement granted by Ms. Webber to the Seaboard).

12. According to the legal description in the easement from Ms. Webber to the Seaboard, the easement covers approximately 3.1 acres. (*See* Tab 3, easement granted by Ms. Palmer to the Seaboard).

13. The remaining portion of the Seaboard Air Line Railway's railroad easement was created by the following conveyances:

a. Easement granted by H.M. Frazee and his wife, Bertie Frazee, to Seaboard Air Line Railway Company, signed September 5, 1910.

b. Easement granted by Clement Phillips and his wife, Lula Phillips, to Seaboard Air Line Railway Company, signed September 5, 1910.

c. Easement granted by Jesse Knight to Seaboard Air Line Railway Company, signed September 3, 1910.

d. Easement granted by Jesse Knight and F.R. Knight to Seaboard Air Line Railway Company, signed September 3, 1910.

e. Easement granted by J.B. Hutchings and Lena Hutchings to Seaboard Air Line Railway Company, signed September 29, 1910.

f. Easement granted by A.E. Blackburn, *Et Ux* to Seaboard Air Line Railway Company, signed September 5, 1910.

14. Tab 4 represents a true and accurate copy of the easement conveyance granted from H.M. Frazee and his wife, Bertie Frazee, to the Seaboard Air Line Railway, signed September 5, 1910 and recorded with the Sarasota County Recorder of Deeds Office.

15. Tab 5 represents a true and accurate copy of the easement conveyance granted from Clement Phillips and his wife, Lula Phillips, to the Seaboard Air Line Railway, signed September 5, 1910 and recorded with the Sarasota County Recorder of Deeds' Office.

16. Tab 6 represents a true and accurate copy of the easement conveyance granted from Jesse Knight to the Seaboard Air Line Railway, signed September 3, 1910 and recorded with the Sarasota County Recorder of Deeds' Office.

17. Tab 7 represents a true and accurate copy of the easement conveyance granted from Jesse Knight and F.R. Knight to the Seaboard Air Line Railway, signed September 3, 1910 and recorded with the Sarasota County Recorder of Deeds' Office.

18. Tab 8 represents a true and accurate copy of the easement conveyance granted from J.B. Hutchings and Lena Hutchings to the Seaboard Air Line Railway, signed September 29, 1910 and recorded with the Sarasota County Recorder of Deeds' Office.

19. Tab 9 represents a true and accurate copy of the easement conveyance granted from A.E. Blackburn, Et Ux to the Seaboard Air Line Railway, signed September 5, 1910 and recorded with the Sarasota County Recorder of Deeds' Office.

**(B) The Plaintiffs are the successors in title to the original property owners that granted the rights-of-way to Seaboard. Each of the Plaintiffs held fee title to their property abutting and underlying the former Seaboard right-of-way on April 2, 2004.**

(1) Bay Plaza Properties, LLC

20. On July 1, 1998, Bay Plaza Properties, LLC ("Bay Plaza") acquired fee title to property in Sarasota County, Florida by that warranty deed recorded in the Sarasota County Recorder of Deeds' Office on July 2, 1998 by Instrument number 1998087387. (A copy of the deed by which Bay Plaza acquired title to its property is attached as "Tab 10.")

21. Bay Plaza's property includes fee title to approximately 308 feet of property lying on the eastern side of the centerline of the abandoned SGLR right-of-way that is now subject to the easement for an interim public-access recreational trail and possible future railroad reactivation. (A copy of a survey for Bay Plaza is attached as "Tab 11.")

22. On April 2, 2004 (the NITU date), Bay Plaza was fee owner of this property with Parcel Identification Number 0406-15-0002. (A copy of the Sarasota County Appraiser report for this property is attached as "Tab 12.")

(2) Bee Ridge, LLC

23. On August 21, 2003, Bee Ridge, LLC ("Bee Ridge") acquired fee title to property in Sarasota County, Florida by that special warranty deed recorded in the Sarasota County Recorder of Deeds' Office on August 28, 2003 by Instrument number 2003173977. (A copy of the deed by which Bee Ridge acquired title to its property is attached as "Tab 13.")

24. Bee Ridge's property includes fee title to approximately 625 feet of property lying on the western side of the centerline of the abandoned SGLR right-of-way that is now subject to the easement for an interim public-access recreational trail and possible future railroad reactivation. (A copy of a survey for Bee Ridge is attached as "Tab 14.")

25. On April 2, 2004 (the NITU date), Bee Ridge was fee owner of this property with Parcel Identification Number 0070-02-0029. (A copy of the Sarasota County Appraiser report for this property is attached as "Tab 15.")

(3) Calusa Lakes Community Association, Inc.

26. On October 1, 2003, Calusa Lakes Community Association, Inc. ("Calusa Lakes") acquired fee title to property in Sarasota County, Florida by that quit claim deed recorded in the Sarasota County Recorder of Deeds' Office by Instrument number 200319979. (A copy of the quit claim deed by which Calusa Lakes acquired title to its property is attached as "Tab 16.")

27. Calusa Lakes' property includes fee title to approximately 1,200 feet of property lying on the eastern side of the centerline of the abandoned SGLR right-of-way that is now subject to the easement for an interim public-access recreational trail and

possible future railroad reactivation. (A copy of the plat for Calusa Lakes is attached as "Tab 17.")

28. On April 2, 2004 (the NITU date), Calusa Lakes was fee owner of this property located in Plat Book 35, Page 34-B with Parcel Identification number 0162-01-0056. (*See id.*)

(4) Cramer Motors, Inc.

29. On July 9, 1993, Cramer Motors, Inc. ("Cramer Motors") acquired fee title to that property in Sarasota County, Florida by warranty deed recorded in the Sarasota County Recorder of Deeds' Office on July 23, 1993, in Book 2530, Page 632 (currently identified as Parcel Identification Number 0427-12-0002). On October 30, 2001, Cramer Motors acquired fee title to that property in Sarasota County, Florida by warranty deed recorded on October 30, 2001 by instrument number 2001156734 (currently identified as Parcel Identification Number 0427-13-0018). (A copy of the warranty deeds by which Cramer Motors acquired its property are attached respectively as "Tab 18" and "Tab 19.")

30. Both properties together include fee title to a total of over 800 feet of property lying on the eastern side of the centerline of the abandoned SGLR right-of-way that is now subject to the easement for an interim public-access recreational trail and possible future railroad reactivation.

31. On April 2, 2004 (the NITU date), Cramer Motors was fee owner of these properties with Parcel Identification Numbers 0427-12-0002 and 0427-13-0018. (A copy of the Sarasota County Appraiser reports are attached respectively as "Tab 20" and "Tab 21.")

(5) Florida Broadacre Trailer Lodge, Inc.

32. On July 1, 1969, Florida Broadacre Trailer Lodge, Inc. (formerly known as "Broad Acre Trailer Lodge, Inc.) ("Broadacre") acquired fee title to that property in Sarasota County, Florida by mortgage deed recorded in the Sarasota County Recorder of Deeds' Office in the Official Records 798, Page 775. (A copy of the mortgage deed by which Broadacre acquired title to its property is attached as "Tab 22.")

33. Broadacre's property includes fee title to approximately 1,263 feet of property lying on the eastern side of the centerline of the abandoned SGLR right-of-way that is now subject to the easement for an interim public-access recreational trail and possible future railroad reactivation.

34. On April 2, 2004 (the NITU date), Broadacre was fee owner of this property with Parcel Identification Number 0052-11-0001. (A copy of the Sarasota County Appraiser report for this property is attached as "Tab 23.")

(6) Florida Rock Concrete, Inc.

35. On August 31, 2001, Florida Rock Concrete, Inc. ("Florida Rock") acquired fee title to property in Sarasota County, Florida by that warranty deed recorded in the Sarasota County Recorder of Deeds' Office by Instrument Number 2001172643 on November 29, 2001. (A copy of the warranty deed by which Florida Rock acquired its property is attached as "Tab 24.")

36. Florida Rock's property includes fee title to approximately 425 feet of property lying on the eastern side of the centerline of the abandoned SGLR right-of-way that is now subject to the easement for an interim public-access recreational trail and

possible future railroad reactivation. (A copy of a survey for this property is attached as "Tab 25.")

37. On April 2, 2004 (the NITU date), Florida Rock was fee owner of this property with Parcel Identification Number 0097-05-0017. (A copy of the Sarasota County Property Appraiser's report for this property is attached as "Tab 26.")

(7) Kimal Lumber Company

38. On January 1, 1986, Kimal Lumber Company ("Kimal Lumber") acquired fee title to property in Sarasota County, Florida by that warranty deed recorded in the Sarasota County Recorder of Deeds' Office in Original Records 1839, Page 2265. (A copy of the warranty deed by which Kimal Lumber acquired title to its property is attached as "Tab 27.")

39. Kimal Lumber's property includes fee title to approximately 445 feet of property lying on the eastern side of the centerline of the abandoned SGLR right-of-way that is now subject to the easement for an interim public-access recreational trail and possible future railroad reactivation. (A copy of a survey for this property is attached as "Tab 28.")

40. On April 2, 2004 (the NITU date), Kimal Lumber was fee owner of this property with Parcel Identification Number 0405-03-0016. (A copy of the Sarasota County Property Appraiser's report for this property is attached as "Tab 29.")

(8) Pine Ranch East Owners Association, Inc.

41. On May 8, 1991, Pine Ranch East Owners Association, Inc. ("Pine Ranch East") acquired fee title to property in Sarasota County, Florida by that general warranty deed recorded in the Sarasota County Recorder of Deeds' Office in Book 2297, Page 762.

(A copy of the general warranty deed by which Pine Ranch East acquired title to its property is attached as "Tab 30.")

42. Pine Ranch East's property includes fee title to approximately 2,392 feet of property lying on the western side of the centerline of the abandoned SGLR right-of-way that is now subject to the easement for an interim public-access recreational trail and possible future railroad reactivation.

43. On April 2, 2004 (the NITU date), Pine Ranch East was fee owner of this property with located in Plat Book 33, Page 12. (A copy of the plat for Pine Ranch East is attached as "Tab 31.")

(9) Post Office Properties, Inc.

44. On July 1, 1994, Post Office Properties, Inc. ("Post Office Properties") acquired fee title to property in Sarasota County, Florida by that warranty deed recorded in the Sarasota County Recorder of Deeds' Office in Book 2648, Page 981. (A copy of the warranty deed by which Post Office Properties acquired title to its property is attached as "Tab 32.")

45. Post Office Properties' property includes fee title to approximately 492 feet of property lying on the western side of the centerline of the abandoned SGLR right-of-way that is now subject to the easement for an interim public-access recreational trail and possible future railroad reactivation.

46. On April 2, 2004 (the NITU date), Post Office Properties was fee owner of this property with Parcel Identification Number 0070-07-0039. (A copy of the Sarasota County Appraiser report for this property is attached as "Tab 33.")

(10) Public Storage

47. Public Storage acquired fee title to its property in Sarasota County, Florida on June 27, 1996 by that warranty deed recorded on July 1, 1996 in the Sarasota County Recorder of Deeds' Office, Book 2868, Page 2691. (A copy of the warranty deed by which Public Storage acquired its property is attached as "Tab 34.")

48. Public Storage's property included fee title to approximately 200 feet of property lying on the eastern side of the centerline of the abandoned SGLR right-of-way that is now subject to the easement for an interim public-access recreational trail and possible future railroad reactivation. (A copy of the survey for Public Storage's property is attached as "Tab 35.")

49. On April 2, 2004 (the NITU date), Public Storage was fee owner of this property with Parcel Identification Number 0428-03-0006. (A copy of the Sarasota County Appraiser's report for this property is attached as "Tab 36.")

(11) Pulte Home Corporation

50. Pulte Home Corporation ("Pulte") acquired fee title to its property in Sarasota County, Florida on October 22, 2003 by that warranty deed recorded in the Sarasota County Recorder of Deeds' Office on October 23, 2003 by Instrument Number 2003215445. (A copy of the warranty deed by which Pulte acquired title to its property is attached as "Tab 37.")

51. Pulte's property included fee title to approximately 2,572 feet of property lying on the western side of the centerline of the abandoned SGLR right-of-way that is now subject to the easement for an interim public-access recreational trail and possible

future railroad reactivation. (A copy of a survey for the property formerly owned by Pulte is attached as "Tab 38.")

52. On April 2, 2004 (the NITU date), Pulte was fee owner of this property with Parcel Identification Number 0115-04-0001.

53. Pulte subsequently sold this property to Arielle on Palmer Ranch Community Association, Inc. on December 23, 2005. (A copy of the quit claim deed conveyed by Pulte Home is attached as "Tab 39.")

(12) Sarasota Investment Company, Inc.

54. On June 26, 1979, Sarasota Investment Company, Inc. ("SIC") acquired fee title to that property in Sarasota County, Florida by warranty deed recorded in the Sarasota County Recorder of Deeds' Office on June 28, 1979 in the Official Records 1314, Page 1306. (A copy of the warranty deed by which SIC acquired title to its property is attached as "Tab 40.")

55. SIC's property includes fee title to approximately 184 feet of property lying on the western side of the centerline of the abandoned SGLR right-of-way that is now subject to the easement for an interim public-access recreational trail and possible future railroad reactivation.

56. On April 2, 2004 (the NITU date), SIC was fee owner of this property with Parcel Identification Number 0070-07-0059. (A copy of the Sarasota County Appraiser report for this property is attached as "Tab 41.")

(13) Southern Spring & Stamping, Inc.

57. On September 1, 1957, Southern Spring & Stamping, Inc. ("Southern Spring") acquired fee title to that property in Sarasota County, Florida by that indenture

recorded in the Sarasota County Recorder of Deeds' Office on November 22, 1957 in the Official Records 64, Page 147. (A copy of the indenture by which Southern Spring acquired its property is attached as "Tab 42.")

58. Southern Spring's property includes fee title to approximately 700 feet of property lying on the eastern side of the centerline of the abandoned SGLR right-of-way that is now subject to the easement for an interim public-access recreational trail and possible future railroad reactivation.

59. On April 2, 2004 (the NITU date), Southern Spring was fee owner of this property with Parcel Identification Number 0407-07-0001. (A copy of the Sarasota County Appraisal report for this property is attached as "Tab 43.")

(14) Stoneybrook Golf & Country Club of Sarasota, Inc.

60. On August 8, 1998, Stoneybrook Golf & Country Club of Sarasota, Inc. ("Stoneybrook") acquired fee title to that property in Sarasota County, Florida recorded by special warranty deed in the Sarasota County Recorder of Deeds' Office on August 6, 1998 by Instrument number 1998105025. (A copy of the special warranty deed by which Stoneybrook acquired its property is attached as "Tab 44.")

61. Stoneybrook's property includes fee title to over 3,000 feet of property lying on the western side of the centerline of the abandoned SGLR right-of-way that is now subject to the easement for an interim public-access recreational trail and possible future railroad reactivation.

62. On April 2, 2004 (the NITU date), Stoneybrook was fee owner of this property with Parcel Identification Number 0134-04-0001. (A copy of the Sarasota County Appraisal report for this property is attached as "Tab 45.")

(15) Tournament Players Club at Prestancia, Inc.

63. Tournament Players Club at Prestancia, Inc. ("TPC") acquired its property in Sarasota County, Florida on January 29, 1992, by that warranty deed recorded in the Sarasota County Recorder of Deeds' Office on January 29, 1992, in Book 2392, Page 1931. (A copy of the warranty deed by which TPC acquired its property is attached as "Tab 46.")

64. TPC's property includes fee title to approximately 4,800 feet of property lying on the western side of the centerline of the abandoned SGLR right-of-way that is now subject to the easement for an interim public-access recreational trail and possible future railroad reactivation.

65. On April 2, 2004 (the NITU date), TPC was fee owner of this property with Parcel Identification Number 0113-01-0100. (A copy of the Sarasota County Appraisal report for this property is attached as "Tab 47.")

(16.) Trinity Chapel of Sarasota, Inc.

66. On February 15, 1978, Trinity Chapel of Sarasota, Inc. (formerly known as Trinity Church of God of Sarasota, Inc.) ("Trinity Chapel") acquired fee title to that property in Sarasota County, Florida by that indenture recorded in the Sarasota County Recorder of Deeds' Office in Official Records 1221, Page 1512. (A copy of the indenture by which Trinity Chapel acquired title to its property is attached as "Tab 48.")

67. Trinity Chapel's property includes fee title to approximately 457 feet of property lying on the western side of the centerline of the abandoned SGLR right-of-way that is now subject to the easement for an interim public-access recreational trail and possible future railroad reactivation.

68. On April 2, 2004 (the NITU date), Trinity Chapel was fee owner of this property with Parcel Identification Number 0060-14-0076. (A copy of the Sarasota County Appraisal report for this property is attached as "Tab 49.")

(17) Triple Diamond Commercial Properties, LLC

69. On May 1, 2002, Triple Diamond Commercial Properties, LLC ("TDCP") acquired fee title to that property in Sarasota County, Florida by that warranty deed recorded in the Sarasota County Recorder of Deeds' Office by Instrument Number 2002081911 recorded on May 20, 2002. (A copy of the warranty deed by which TDCP acquired title to its property is attached as "Tab 50.")

70. TDCP's property includes fee title to approximately 700 feet of property lying on the western side of the centerline of the abandoned SGLR right-of-way that is now subject to the easement for an interim public-access recreational trail and possible future railroad reactivation.

71. On April 2, 2004 (the NITU date), TDCP was fee owner of this property with Parcel Identification Number 0406-11-0007. (A copy of the Sarasota County Appraisal report for this property is attached as "Tab 51.")

(18) Venice Plaza Ltd.

72. On February 14, 1996, Venice Plaza, Ltd. ("Venice Plaza") acquired fee title to that property in Sarasota County, Florida by that special warranty deed recorded in the Sarasota County Recorder of Deeds' Office in Book 2822, Page 1733. (A copy of the special warranty deed by which Venice Plaza acquired title to its property is attached as "Tab 52.")

73. Venice Plaza's property includes fee title to approximately 760 feet of property lying on the eastern side of the centerline of the abandoned SGLR right-of-way that is now subject to the easement for an interim public access trail and possible future railroad reactivation. (A copy of a survey for Venice Plaza's property is attached as "Tab 53.")

74. On April 2, 2004 (the NITU date), Venice Plaza was fee owner of this property with Parcel Identification Number 0407-02-0001. (A copy of the Sarasota County Appraisal report for this property is attached as "Tab 54.")

(19) West Coast Inland Navigation District

75. West Coast Inland Navigation District ("WCIND") acquired title to its property in Sarasota County, Florida by a federal Order of Taking, Law No. 6871 on December 18, 1964. (A copy of the WCIND official right-of-way maps are attached collectively as "Tab 55.")

76. WCIND's property includes fee title to approximately 556 feet of property lying on the western side of the centerline of the abandoned SGLR right-of-way that is now subject to the easement for an interim public-access recreational trail and possible future railroad reactivation. (A copy of a survey for WCIND's property is attached as "Tab 56.")

77. WCIND was fee owner of this property with Parcel Identification Number 0407-11-0007 on April 2, 2004 (the date of the NITU). (A copy of the Sarasota County Appraiser's report for this property is attached as "Tab 57.")

(20) Louis L. Alderman

78. Louis L. Alderman and his wife, Lilli I. Alderman, acquired fee title to their home in Sarasota County, Florida on April 14, 1980 by that quit-claim deed recorded on April 16, 1980 in the Sarasota County Recorder of Deeds' Office in Original Records 1366, Page 1579. (A copy of the quit-claim deed by which the Aldermans acquired title to their home is attached as "Tab 58.") Ms. Alderman died on April 19, 1983. (A copy of Ms. Alderman's death certificate is attached as "Tab 59.") On April 2, 2004, Mr. Alderman was the sole owner of this property.

79. Mr. Alderman's property includes fee title to approximately 697 feet of property lying on the western side of the centerline of the abandoned SGLR right-of-way that is now subject to the easement for an interim public-access recreational trail and possible future railroad reactivation. (A copy of a survey for Mr. Alderman's property is attached as "Tab 60.")

80. Mr. Alderman was fee owner of this property with Parcel Identification Number 0071-09-0002 on April 2, 2004 (the date of the NITU). (A copy of the Sarasota County Appraiser's report for this property is attached as "Tab 61.")

(21) Alexandrine Boswell

81. Alexandrine Boswell acquired fee title to her property in Sarasota County, Florida on December 2, 1970 by that warranty deed recorded in the Sarasota County Recorder of Deeds' Office on December 2, 1970 in Sarasota County Official Records 868, Page 832. (A copy of the deed by which Ms. Boswell acquired her property is attached as "Tab 62.")

82. Ms. Boswell's property includes fee title to approximately 800 feet of property lying on the western side of the centerline of the abandoned SGLR right-of-way that is now subject to the easement for an interim public-access recreational trail and possible future railroad reactivation.

83. Ms. Boswell's property was subsequently sub-divided into Parcel Identification Numbers 0061-03-0002 and 0061-03-0004. Ms. Boswell was fee owner of both of these properties on April 2, 2004 (the date of the NITU). (A copy of the Sarasota County Appraiser reports are attached respectively as "Tab 63" and "Tab 64.")

(22) Ann Converse, Susan J. Beltran, Cathy C. Siano, and Sandy Chestnutt

84. Gino L. Cantele and Audrey H. Cantele, as Co-Trustees of the Gino L. Cantele and Audrey H. Cantele Revocable Living Trust Agreement dated September 28 ("Cantele Living Trust"), 1994, acquired fee title to their property in Sarasota County, Florida on May 30, 2002, by that special warranty deed recorded by Instrument Number 2002096399 on June 13, 2002. (A copy of the special warranty deed by which the Cantele's acquired title to their property is attached as "Tab 65.")

85. On June 2, 2004, Gino L. Cantele died, leaving Audrey H. Cantele as the Personal Representative of the Estate of Mr. Cantele and the Trustee of the Cantele Living Trust. (A copy of Mr. Cantele's death certificate is attached as "Tab 66.")

86. Ann Converse, Susan J. Beltran, Sandy Chestnutt, and Cathy Siano are the children of Mr. Cantele ("children").

87. According to the terms of the Cantele Living Trust, upon the death of Mr. Cantele, the assets of the his trust were to be distributed with 20% going to each of the

four children and 20% going to Ms. Cantele. (A copy of the Cantele Living Trust is attached as "Tab 67.")

88. On August 24, 2006, Ms. Converse accepted her appointment as Successor Personal Representative of Mr. Cantele's Estate and as Successor Trustee of the Cantele Living Trust. (A copy of Ms. Converse's Acceptance by Successor Personal Representative is attached as "Tab 68" and a copy of Ms. Converse's Acceptance by Successor Trustee is attached as "Tab 69.")

89. On October 7, 2006, Ms. Cantele resigned as Personal Representative of the Mr. Cantele's Estate and as Trustee of the Cantele Living Trust. (A copy of Ms. Cantele's Resignation as Personal Representative is attached as "Tab 70" and a copy of Ms. Cantele's Resignation as Trustee is attached as "Tab 71.")

90. On October 31, 2006, Ms. Cantele and the four children entered into a Settlement Agreement whereby Ms. Cantele agreed to resign as personal representative of Mr. Cantele's estate and as trustee of the Cantele Living Trust. This Agreement also provided that the children would buy Ms. Cantele's interest in the trust and Mr. Cantele's Estate. (A copy of this Settlement Agreement is attached as "Tab 72.")

91. The four children, Ms. Converse, Ms. Beltran, Ms. Chestnutt, and Ms. Siano are the successor beneficiaries of the Gino L. Cantele and Audrey H. Cantele Revocable Living Trust Agreement dated September 28.

92. The Cantele Living Trust's property included fee title to approximately 394 feet of property lying on the western side of the centerline of the abandoned SGLR right-of-way that is now subject to the easement for an interim public access trail and possible future railroad reactivation.