-

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| BAY PLAZA PROPERTIES, LLC, | ) | |
| BEE RIDGE, LLC, | ) | |
| CALUSA LAKES COMMUNITY ASSOCIATION, INC., | ) | |
| CRAMER MOTORS, INC., | ) | |
| FLORIDA BROADACRE TRAILER LODGE, INC., | ) | No. 08-198 |
| FLORIDA LESSOR-FIVE FACILITIES, INC., | ) | |
| FLORIDA ROCK CONCRETE, INC., | ) | |
| KIMAL LUMBER COMPANY, | ) | |
| PINE RANCH EAST OWNERS ASSOCIATION, INC., | ) | |
| POST OFFICE PROPERTIES, INC., | ) | |
| PUBLIC STORAGE, | ) | |
| PULTE HOME CORPORATION, | ) | |
| SARASOTA INVESTMENT COMPANY INC., | ) | |
| SOUTHERN SPRING & STAMPING, INC., | ) | |
| STONEYBROOK GOLF & COUNTRY CLUB OF SARASOTA, INC., | ) | |
| TOURNAMENT PLAYERS CLUB AT PRESTANCIA, INC., | ) | |
| TRINITY CHAPEL OF SARASOTA, INC., | ) | |
| TRIPLE DIAMOND COMMERCIAL PROPERTIES, LLC, | ) | |

VENICE PLAZA LTD.,

WEST COAST INLAND NAVIGATION DISTRICT,

LOUIS L. ALDERMAN,

ALEXANDRINE BOSWELL,

ANN CONVERSE, SUSAN J. BELTRAN, CATHY C. SIANO, AND SANDY CHESTNUTT,

PATRICIA M. DAVIDS,

DEE A. DEATERLY,

KELLY A. GLAUSMAN,

JAY HARDY,

FAYE HOWARD,

RONALD MILLER AND M&H CORPORATION,

ILENE MIRMAN,

KENNETH S. PATTON,

SHARON L. WILKIE AND THE JAMES H. WILKIE ESTATE, and

ROBERT L. WILLIAMS

Plaintiffs,

vs.

THE UNITED STATES OF AMERICA,

Defendant.

**FIRST AMENDED COMPLAINT**

## SUMMARY OF THIS CASE

The Plaintiffs are citizens of the United States. The Plaintiffs are also the fee owners of land in Sarasota County, Florida. In 1910, the Seaboard Air Line Railway acquired an easement for the operation of a railroad across an approximately 12 mile long corridor from Sarasota to Venice, Florida. This railroad right-of-way was used for, among other purposes, the operation of trains used by the Ringling Brothers Circus.

This railroad easement was granted for the operation of a railroad and not for any other purpose. Under the terms of the relevant easement instruments and under Florida law, once the successor to the Seaboard Air Line Railway (which is now the Seminole Gulf Railway, L.P. ("SGLR")) ceased operating a railroad across the right-of-way, the railroad easement was abandoned and the Plaintiffs, as the fee owners of this land, regained their right to the exclusive use and physical possession of their property.

However, § 8 (d) of the 1983 amendments to the National Trails System Act, 16 U.S.C. §1247(d) ("Trails Act"), provides that the issuance of a Notice of Interim Trail Use ("NITU") by the Surface Transportation Board (STB) forestalls or precludes the Plaintiff property owners "reversionary"[1] property rights and allows the Plaintiffs' property to be transferred to a trail user notwithstanding whatever "reversionary" interest the Plaintiff's possess to their property under Florida law.

[1] Plaintiff's use the term "reversionary" because such term was used in the generic sense by the Federal Circuit in *Barclay* and *Renewal Body Works*. Technically this is not a "reversion" of the property. Rather the Plaintiff's and their predecessors in title always held fee title to the property. Their fee title had been burdened by an easement for operation of a railroad. Upon the railroad's abandonment of this easement, their fee became "unburdened" by this easement to the extent that "reversionary" is used in this pleading it is used in the generic sense.

The STB issued a NITU affecting this abandoned railroad right-of-way on April 2, 2004. Pursuant to the Trails Act and this NITU, Sarasota County (and/or the Trust for Public Land) entered into negotiations with SGLR and CSX Transportation, Inc, (CSX) for acquisition of an easement for a public access recreational trail to be located across the abandoned railroad corridor. Under the terms of the original railroad easement, and under Florida law, SGLR and CSX did not own or possess any right to grant Sarasota County or the Trust for Public Land an easement across the Plaintiffs' land.

The denial of the Plaintiff landowners' right to possess their property and the appropriation of a new easement for an interim public recreational trail and the creation of a new easement for a future railroad corridor across the Plaintiffs' property is a taking of the Plaintiffs' property for which the Fifth Amendment to the U.S. Constitution requires that the United States pay "just compensation" to the Plaintiff property owners. To date, the United States has taken these landowners property and has not paid, nor has the federal government offered to pay, any compensation.

This action is the claim by these United States citizens brought pursuant to the Fifth Amendment and the Tucker Act 28 U.S.C. § 1491 (a)(1) seeking "just compensation" for the value of their property taken from them by the federal government through operation of the Trails Act. The "just compensation" they seek includes compensation for the delay between the date their property was taken (or made subject to the Trails Act) and when the federal government ultimately pays them compensation.

They also seek the government to pay their attorney fees and expenses incurred in bringing this action pursuant to the Declarations of Taking Act 42 U.S.C. § 4654 (c).

## COMPLAINT

## JURISDICTION

1. This court has jurisdiction pursuant to 28 U.S.C. §1491(a)(1) ("Tucker Act"), in that this action presents a claim against the United States which is founded upon the Constitution and Statutes of the United States.

## STATUTES AND CONSTITUTIONAL PROVISIONS

2. Plaintiffs' claim is governed by the following statute and constitutional provisions:

(a) The Fifth Amendment to the United States Constitution which provides, "No person shall be . . . deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation."

(b) National Trails System Act Amendments of 1983, 16 U.S.C. § 1247(d) ("Trails Act")

(c) The Tucker Act, 28 U.S.C. § 1491(a)("Tucker Act") which provides in relevant part, "The United States Court of Federal Claims shall have jurisdiction to render judgment on any claim against the United States founded upon the Constitution."

(d) The Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. §4654 (c) (2000) provides that just compensation includes, "reasonable costs, disbursements and expenses, including reasonable attorney, appraisal and engineering fees, actually incurred because of [the] proceeding."

## STATEMENT OF FACTS

3. In 1910, the Seaboard Air Line Railway acquired an easement for the operation of a railroad line between the cities of Sarasota and Venice, Florida.

4. The majority of this easement was acquired by the Seaboard Air Line Railway across property owned by members of the Palmer Family, specifically, Potter Palmer, Jr. and from Adrian C. Honore, as well as Sarah O. Webber.

5. The easement granted to the Seaboard Air Line Railway specifically provided that the easement was for the purpose of operating a railroad and provided that, "This conveyance is made upon the express condition, however, that if the Seaboard Airline Railway shall not construct upon said land and commence the operation thereon with (sic) one year of the date hereof of a line of railroad, or, **if at any time thereafter the said Seaboard Air Line Railway shall abandon said line for railroad purposes then the above described pieces and parcels of land shall *ipso facto* revert to and again become the property of the undersigned, his heirs, administrators and assigns.**" (A complete copy of these easement instruments is attached as "Exhibit 1."[2])

6. Other easements by which the Seaboard Air Line Railway acquired the right to use the property across which the railroad was constructed contained similar provisions limiting the use of the property by the railroad to an easement for the purpose of operating a railroad.

7. On December 15, 2003, Seminole Gulf Railway, L.P. (SGLR), filed with the Surface Transportation Board a petition under 49 U.S.C. 10502 for exemption from the provisions of 49 U.S.C. 10903 to abandon an approximately 12.43-mile portion of its Venice Branch between milepost SW 892 outside the city limits of the City of Sarasota, and milepost 904.4 near the City of Venice, in Sarasota County, FL. The line includes a "wye" and stub at approximately milepost SW 904.2 and side tracks.

---

[2] All exhibits are incorporated by reference throughout this Petition.

8. According to SGLR, no railroad traffic has moved over this railroad corridor since March, 2002 and, "there is little likelihood of traffic returning to the [rail] line."

9. The SGLR (and CSX) are the successors and assigns of the Seaboard Air Line Railway.

10. On April 2, 2004, the federal STB issued a NITU for this abandoned railroad corridor. (A copy of the NITU is attached as Exhibit "2").

11. Pursuant to this NITU, the SGLR and CSX granted The Trust for Public Land an option to acquire the rail line for conversion to a trail.

12. The Trust for Public Land agreed to work with Sarasota County to convert the rail line into a public-access recreational trail.

13. The negotiating period for reaching a Trail Use Agreement between the SGLR and Sarasota County or the Trust for Public Land was extended by the STB.

14. On January 13, 2005, a Quit Claim Deed was recorded between CSX Transportation, Inc. (the entity from which SGLR leased the abandoned right-of-way) and The Trust for Public Land. This deed was executed pursuant to a Trail Use Agreement that Plaintiffs believe was reached on or about December 2004. (A complete copy of this Quit Claim Deed is attached as "Exhibit 3".)

15. This Quit Claim Deed affects more than 155 acres of property in Sarasota County, Florida including that property owned by the Plaintiffs.

16. This Quit Claim Deed was expressly executed and entered into by the Trust for Public Land and CSX in reliance upon the STB's issuance of the NITU and the provisions of the Trails Act.

17. The Trust for Public Land is a national, nonprofit, land conservation organization. The Trust for Public Land is not a railroad and is not authorized by any state or by the federal Surface Transportation Board to operate a railroad.

18. Sarasota County, Florida, a municipal entity, is not authorized by the state of Florida (or by any other state) or by the federal Surface Transportation Board to operate a railroad.

19. The SGLR (and/or Sarasota County) has removed the rails and ties from the abandoned right-of-way.

20. The National Trails System Act Amendments of 1983, 16 U.S.C. § 1247(d) ("Trails Act") provide, "in the case of interim use of any established railroad rights-of-way pursuant to donation, transfer, lease, sale, or otherwise in a manner consistent with this chapter, if such interim use is subject to restoration or reconstruction for railroad purposes, such interim use shall not be treated, for purposes of any law or rule of law, as an abandonment of the use of such rights-of-way for railroad purposes."

21. But for operation of the Trails Act, the Plaintiffs would have the exclusive right to physical ownership, possession, and use of their property free of any easement for recreational trail use or future railroad use.

22. The United States Supreme Court in *Preseault v. United States* (*Preseault I*), 494 U.S. 1 (1990) held that Congress possessed the constitutional authority to enact the Trails Act and to take the Plaintiffs' property for conversion to a public-access recreational trail and preservation of a railroad easement for a possible future railroad corridor.

23. However, the Supreme Court in *Preseault I* and the Federal Circuit sitting *en banc* in *Preseault v. United States*, (*Preseault II*), 100 F.3d 1525 (Fed. Cir. 1996) held that the Fifth Amendment to the United States Constitution requires the United States to pay the property owners for the value of that property taken by operation of Section 8(d) of the Trails Act. To wit, Justice O'Connor wrote in *Preseault I*, "[the Trails Act] provides that interim trail use 'shall not be treated, for any purposes of any law or rule of law, as an abandonment of the use of such rights-of-way for railroad purposes.' This language gives rise to a takings question in the typical rails-to-trails case because many railroads do not own their rights-of-way outright but rather hold them under easements or similar property interests. While the terms of these easements and applicable state law vary, frequently the easements provide that the property reverts to the abutting landowner upon abandonment of rail operations. State law generally governs the disposition of reversionary interests. By deeming interim trail use to be like discontinuance rather than abandonment, Congress prevents property interests from reverting under state law." *Preseault I* at 8.

24. The U.S. Court of Appeals for the Federal Circuit in *Preseault II*, held "We conclude that the taking that resulted from the establishment of the recreational trail is properly laid at the doorstep of the Federal Government. *** In the case before us there was a similar physical entry upon the private lands of the [property owners], acting under the Federal Government's authority pursuant to the ICC's [now STB's] Order. That it was for a valued public use is not the issue. We have here a straightforward taking of private property for a public use for which just compensation must be paid." *Preseault II* at 1551.

25. The property over which the abandoned SGLR right-of-way is located is valuable property.

26. Creating a public-access recreational trail across the Plaintiffs' property and appropriating a new easement for possible future railroad use has taken from the Plaintiffs not just the value of the land physically appropriated for this trail corridor but has also greatly diminished the value of the Plaintiffs' property adjoining this trail corridor.

27. The value of the property taken from the Plaintiffs (both that physically appropriated for a public trail and that diminished value of the Plaintiffs' adjoining property) is very substantial.

28. The Federal Circuit in *Caldwell v. United States*, 391 F.3d 1226 (Fed. Cir. 2004) and *Barclay v. United States*, 443 F.3d 1368 (2006) held that this claim for compensation has arisen upon the date that the Surface Transportation Board issued the NITU. Specifically, Judge Dyk of the Federal Circuit wrote, "[t]he taking, if any, when a railroad right-of-way is converted to interim trail use under the Trails Act occurs when state law reversionary property interests that would otherwise vest in the adjacent landowners are blocked from so vesting. Abandonment is suspended and the reversionary interest is blocked 'when the railroad and trail operator communicate to the STB their intention to negotiate a trail use agreement and the agency issues an NITU that operates to preclude abandonment under section 8(d)' of the Trails Act. We concluded that '[t]he issuance of the NITU is the only government action in the rail banking process that operates to prevent abandonment of the corridor and to preclude the vesting of state law reversionary interests in the right of way.' Thus, a Trails Act taking begins and a

takings claim accrues, if at all, on issuance of the NITU." *Barclay v. United States*, 443 F.3d 1368 (2006) (Judge Dyk cited his own prior decision in *Caldwell v. United States* as authority.)

29. The United States Constitution requires the federal government to pay "just compensation" to all those property owners' holding fee title to land that was subject to the NITU.

**THE PARTIES**

**Bay Plaza Properties, LLC**

30. Bay Plaza Properties, LLC ("Bay Plaza") is a Florida Limited Liability Corporation and a citizen of the United States of America.

31. On July 1, 1998, Bay Plaza acquired fee title to property in Sarasota County, Florida by that warranty deed recorded in the Sarasota County Recorder of Deeds' Office on July 2, 1998 by Instrument number 1998087387. (A copy of the deed by which Bay Plaza acquired title to its property is attached as "Exhibit 4.")

32. Bay Plaza's property includes fee title to approximately 308 feet of property lying on the eastern side of the centerline of the abandoned SGLR right-of-way that is now subject to the easement for an interim public-access recreational trail and possible future railroad reactivation. (A copy of a survey for Bay Plaza is attached as "Exhibit 5.")

33. On April 2, 2004 (the NITU date), Bay Plaza was fee owner of this property with Parcel Identification Number 0406-15-0002. (A copy of the Sarasota County Appraiser report for this property is attached as "Exhibit 6.")

**Bee Ridge, LLC**

34. Bee Ridge, LLC ("Bee Ridge") is a Florida Limited Liability Corporation and a citizen of the United States of America.

35. On August 21, 2003, Bee Ridge acquired fee title to property in Sarasota County, Florida by that special warranty deed recorded in the Sarasota County Recorder of Deeds' Office on August 28, 2003 by Instrument number 2003173977. (A copy of the deed by which Bee Ridge acquired title to its property is attached as "Exhibit 7.")

36. Bee Ridge's property includes fee title to approximately 625 feet of property lying on the western side of the centerline of the abandoned SGLR right-of-way that is now subject to the easement for an interim public-access recreational trail and possible future railroad reactivation. (A copy of a survey for Bee Ridge is attached as "Exhibit 8.")

37. On April 2, 2004 (the NITU date), Bee Ridge was fee owner of this property with Parcel Identification Number 0070-02-0029. (A copy of the Sarasota County Appraiser report for this property is attached as "Exhibit 9.")

**Calusa Lakes Community Association, Inc.**

38. Calusa Lakes Community Association, Inc. ("Calusa Lakes") is a Florida Corporation in Good Standing and a citizen of the United States of America.

39. On October 1, 2003, Calusa Lakes acquired fee title to property in Sarasota County, Florida by that quit claim deed recorded in the Sarasota County Recorder of Deeds' Office by Instrument number 200319979. (A copy of the quit claim deed by which Calusa Lakes acquired title to its property is attached as "Exhibit 10.")

40. Calusa Lakes' property includes fee title to approximately 1,200 feet of property lying on the eastern side of the centerline of the abandoned SGLR right-of-way that is now subject to the easement for an interim public-access recreational trail and possible future railroad reactivation. (A copy of the plat for Calusa Lakes is attached as "Exhibit 11.")

41. On April 2, 2004 (the NITU date), Calusa Lakes was fee owner of this property located in Plat Book 35, Page 34-B with Parcel Identification number 0162-01-0056. (*See id.*)

**Cramer Motors, Inc.**

42. Cramer Motors Inc. ("Cramer Motors") is a Florida Corporation in Good Standing and a citizen of the United States of America.

43. On July 9, 1993, Cramer Motors acquired fee title to that property in Sarasota County, Florida by warranty deed recorded in the Sarasota County Recorder of Deeds' Office on July 23, 1993, in Book 2530, Page 632 (currently identified as parcel identification number 0427-12-0002). On October 30, 2001, Cramer Motors acquired fee title to that property in Sarasota County, Florida by warranty deed recorded on October 30, 2001 by instrument number 2001156734 (currently identified as parcel identification umber 0427-13-0018). (A copy of the warranty deeds by which Cramer Motors acquired its property are attached respectively as "Exhibit 12" and "Exhibit 13.")

44. Both properties together include fee title to a total of over 800 feet of property lying on the eastern side of the centerline of the abandoned SGLR right-of-way that is now subject to the easement for an interim public-access recreational trail and possible future railroad reactivation.

45. On April 2, 2004 (the NITU date), Cramer Motors was fee owner of these properties with Parcel Identification Numbers 0427-12-0002 and 0427-13-0018. (A copy of the Sarasota County Appraiser reports are attached respectively as "Exhibit 14" and "Exhibit 15.")

**Florida Broadacre Trailer Lodge, Inc.**

46. Florida Broadacre Trailer Lodge, Inc. (formerly known as "Broad Acre Trailer Lodge, Inc.) ("Broadacre") is a Florida Corporation in Good Standing in the State of Florida and a citizen of the United States of America.

47. On July 1, 1969, Broadacre acquired fee title to that property in Sarasota County, Florida by mortgage deed recorded in the Sarasota County Recorder of Deeds' Office in the Official Records 798, Page 775. (A copy of the mortgage deed by which Broadacre acquired title to its property is attached as "Exhibit 16.")

48. Broadacre's property includes fee title to approximately 1,263 feet of property lying on the eastern side of the centerline of the abandoned SGLR right-of-way that is now subject to the easement for an interim public-access recreational trail and possible future railroad reactivation.

49. On April 2, 2004 (the NITU date), Broadacre was fee owner of this property with Parcel Identification Number 0052-11-0001. (A copy of the Sarasota County Appraiser report for this property is attached as "Exhibit 17.")

**Florida Lessor-Five Facilities, Inc.**

50. Florida Lessor-Five Facilities, Inc. ("FLFF") merged into OHI Asset (FL), LLC, which is a Florida Corporation in Good Standing and a citizen of the United States of America.

51. FLFF acquired fee title to property in Sarasota County, Florida by that deed in lieu of foreclosure recorded in the Sarasota County Recorder of Deeds' Office on April 3, 2003 by Instrument Number 2003063228. (A copy of the deed by which FLFF acquired title to its property is attached as "Exhibit 18.")

52. FLFF's property includes fee title to approximately 1,350 feet of property lying on the western side of the centerline of the abandoned SGLR right-of-way that is now subject to the easement for an interim public-access recreational trail and possible future railroad reactivation. (A copy of the plat for FLFF is attached as "Exhibit 19.")

53. On April 2, 2004 (the NITU date), FLFF was fee owner of this property with Parcel Identification Number 0052-04-1001. (A copy of the Sarasota County Appraiser report for this property is attached as "Exhibit 20.").

**Florida Rock Concrete, Inc.**

54. Florida Rock Concrete, Inc. ("Florida Rock") was merged into Florida Rock Industries, Inc., which is a Florida Corporation in Good Standing in the State of Florida and a citizen of the United States of America.

55. On August 31, 2001, Florida Rock acquired fee title to property in Sarasota County, Florida by that warranty deed recorded in the Sarasota County Recorder of Deeds' Office by Instrument Number 2001172643 on November 29, 2001. (A copy of the warranty deed by which Florida Rock acquired its property is attached as "Exhibit 21.")

56. Florida Rock's property includes fee title to approximately 425 feet of property lying on the eastern side of the centerline of the abandoned SGLR right-of-way that is now subject to the easement for an interim public-access recreational trail and

possible future railroad reactivation. (A copy of a survey for this property is attached as "Exhibit 22.")

57. On April 2, 2004 (the NITU date), Florida Rock was fee owner of this property with Parcel Identification Number 0097-05-0017. (A copy of the Sarasota County Property Appraiser's report for this property is attached as "Exhibit 23.")

**Kimal Lumber Company**

58. Kimal Lumber Company ("Kimal Lumber") is a Florida Corporation in Good Standing and a citizen of the United States of America.

59. On January 1, 1986, Kimal Lumber acquired fee title to property in Sarasota County, Florida by that warranty deed recorded in the Sarasota County Recorder of Deeds' Office in Original Records 1839, Page 2265. (A copy of the warranty deed by which Kimal Lumber acquired title to its property is attached as "Exhibit 24.")

60. Kimal Lumber's property includes fee title to approximately 445 feet of property lying on the eastern side of the centerline of the abandoned SGLR right-of-way that is now subject to the easement for an interim public-access recreational trail and possible future railroad reactivation. (A copy of a survey for this property is attached as "Exhibit 25.")

61. On April 2, 2004 (the NITU date), Kimal Lumber was fee owner of this property with Parcel Identification Number 0405-03-0016. (A copy of the Sarasota County Property Appraiser's report for this property is attached as "Exhibit 26.")

**Pine Ranch East Owners Association, Inc.**

62. Pine Ranch East Owners Association, Inc. ("Pine Ranch East") is a Florida Corporation in Good Standing and a citizen of the United States of America.

63. On May 8, 1991, Pine Ranch East acquired fee title to property in Sarasota County, Florida by that general warranty deed recorded in the Sarasota County Recorder of Deeds' Office in Book 2297, Page 762. (A copy of the general warranty deed by which Pine Ranch East acquired title to its property is attached as "Exhibit 27.")

64. Pine Ranch East's property includes fee title to approximately 2,392 feet of property lying on the western side of the centerline of the abandoned SGLR right-of-way that is now subject to the easement for an interim public-access recreational trail and possible future railroad reactivation.

65. On April 2, 2004 (the NITU date), Pine Ranch East was fee owner of this property with located in Plat Book 33, Page 12. (A copy of the plat for Pine Ranch East is attached as "Exhibit 28.")

**Post Office Properties, Inc.**

66. Post Office Properties, Inc. ("Post Office Properties") is a Florida Corporation that was dissolved in 2000. Steve Allen, President of Sarasota Investment Co., Inc., is currently acting as agent and successor for Post Office Properties with the ability under Florida law to make and enforce claims on behalf of Post Office Properties.

67. On July 1, 1994, Post Office Properties acquired fee title to property in Sarasota County, Florida by that warranty deed recorded in the Sarasota County Recorder of Deeds' Office in Book 2648, Page 981. (A copy of the warranty deed by which Post Office Properties acquired title to its property is attached as "Exhibit 29.")

68. Post Office Properties' property includes fee title to approximately 492 feet of property lying on the western side of the centerline of the abandoned SGLR right-

of-way that is now subject to the easement for an interim public-access recreational trail and possible future railroad reactivation.

69. On April 2, 2004 (the NITU date), Post Office Properties was fee owner of this property with Parcel Identification Number 0070-07-0039. (A copy of the Sarasota County Appraiser report for this property is attached as "Exhibit 30.")

**Public Storage**

70. Public Storage is a Maryland real estate investment trust, successor by operation of a merger to Public Storage, Inc, and is a citizen of the United States of America.

71. Public Storage acquired fee title to its property in Sarasota County, Florida on June 27, 1996 by that warranty deed recorded on July 1, 1996 in the Sarasota County Recorder of Deeds' Office, Book 2868, Page 2691. (A copy of the warranty deed by which Public Storage acquired its property is attached as "Exhibit 31.")

72. Public Storage's property included fee title to approximately 200 feet of property lying on the eastern side of the centerline of the abandoned SGLR right-of-way that is now subject to the easement for an interim public access trail and possible future railroad reactivation. (A copy of the survey for Public Storage's property is attached as "Exhibit 32.")

73. On April 2, 2004 (the NITU date), Public Storage was fee owner of this property with Parcel Identification Number 0428-03-0006. (A copy of the Sarasota County Appraiser's report for this property is attached as "Exhibit 33.")

**Pulte Home Corporation**

74. Pulte Home Corporation ("Pulte") is a Michigan corporation authorized to conduct (and conducting) business in the State of Florida and is a citizen of the United States of America.

75. Pulte acquired fee title to its property in Sarasota County, Florida on October 22, 2003 by that warranty deed recorded in the Sarasota County Recorder of Deeds' Office on October 23, 2003 by Instrument Number 2003215445. (A copy of the warranty deed by which Pulte acquired title to its property is attached as "Exhibit 34.")

76. Pulte's property included fee title to approximately 2,572 feet of property lying on the western side of the centerline of the abandoned SGLR right-of-way that is now subject to the easement for an interim public-access recreational trail and possible future railroad reactivation. (A copy of a survey for the property formerly owned by Pulte is attached as "Exhibit 35.")

77. On April 2, 2004 (the NITU date), Pulte was fee owner of this property with Parcel Identification Number 0115-04-0001.

78. Pulte subsequently sold this property to Arielle on Palmer Ranch Community Association, Inc. on December 23, 2005. (A copy of the quit claim deed conveyed by Pulte Home is attached as "Exhibit 36.")

**Sarasota Investment Company, Inc.**

79. Sarasota Investment Company, Inc. ("SIC") is a Florida Corporation in Good Standing and a citizen of the United States of America.

80. On June 26, 1979, SIC acquired fee title to that property in Sarasota County, Florida by warranty deed recorded in the Sarasota County Recorder of Deeds'

Office on June 28, 1979 in the Official Records 1314, Page 1306. (A copy of the warranty deed by which SIC acquired title to its property is attached as "Exhibit 37.")

81. SIC's property includes fee title to approximately 184 feet of property lying on the western side of the centerline of the abandoned SGLR right-of-way that is now subject to the easement for an interim public-access recreational trail and possible future railroad reactivation.

82. On April 2, 2004 (the NITU date), SIC was fee owner of this property with Parcel Identification Number 0070-07-0059. (A copy of the Sarasota County Appraiser report for this property is attached as "Exhibit 38.")

**Southern Spring & Stamping, Inc.**

83. Southern Spring & Stamping, Inc. ("Southern Spring") is a Florida Corporation in Good Standing and a citizen of the United States of America.

84. On September 1, 1957, Southern Spring acquired fee title to that property in Sarasota County, Florida by that indenture recorded in the Sarasota County Recorder of Deeds' Office on November 22, 1957 in the Official Records 64, Page 147. (A copy of the indenture by which Southern Spring acquired its property is attached as "Exhibit 39.")

85. Southern Spring's property includes fee title to approximately 700 feet of property lying on the eastern side of the centerline of the abandoned SGLR right-of-way that is now subject to the easement for an interim public-access recreational trail and possible future railroad reactivation.

86. On April 2, 2004 (the NITU date), Southern Spring was fee owner of this property with Parcel Identification Number 0407-07-0001. (A copy of the Sarasota County Appraisal report for this property is attached as "Exhibit 40.")