**Stoneybrook Golf & Country Club of Sarasota, Inc.**

87. Stoneybrook Golf & Country Club of Sarasota, Inc. ("Stoneybrook") is a Florida Corporation in Good Standing and a citizen of the United States of America.

88. On August 8, 1998, Stoneybrook acquired fee title to that property in Sarasota County, Florida recorded by special warranty deed in the Sarasota County Recorder of Deeds' Office on August 6, 1998 by Instrument number 1998105025. (A copy of the special warranty deed by which Stoneybrook acquired its property is attached as "Exhibit 41.")

89. Stoneybrook's property includes fee title to over 3,000 feet of property lying on the western side of the centerline of the abandoned SGLR right-of-way that is now subject to the easement for an interim public-access recreational trail and possible future railroad reactivation.

90. On April 2, 2004 (the NITU date), Stoneybrook was fee owner of this property with Parcel Identification Number 0134-04-0001. (A copy of the Sarasota County Appraisal report for this property is attached as "Exhibit 42.")

**Tournament Players Club at Prestancia, Inc.**

91. Tournament Players Club at Prestancia, Inc. ("TPC") is a Florida Corporation in Good Standing and a citizen of the United States of America.

92. TPC acquired its property in Sarasota County, Florida on January 29, 1992, by that warranty deed recorded in the Sarasota County Recorder of Deeds' Office on January 29, 1992, in Book 2392, Page 1931. (A copy of the warranty deed by which TPC acquired its property is attached as "Exhibit 43.")

93. TPC's property includes fee title to approximately 4,800 feet of property lying on the western side of the centerline of the abandoned SGLR right-of-way that is now subject to the easement for an interim public-access recreational trail and possible future railroad reactivation.

94. On April 2, 2004 (the NITU date), TPC was fee owner of this property with Parcel Identification Number 0113-01-0100. (A copy of the Sarasota County Appraisal report for this property is attached as "Exhibit 44.")

**Trinity Chapel of Sarasota, Inc.**

95. Trinity Chapel of Sarasota, Inc. (formerly known as Trinity Church of God of Sarasota, Inc.) ("Trinity Chapel") is a Florida Corporation in Good Standing in the State of Florida and a citizen of the United States of America.

96. On February 15, 1978, Trinity Chapel acquired fee title to that property in Sarasota County, Florida by that indenture recorded in the Sarasota County Recorder of Deeds' Office in Official Records 1221, Page 1512. (A copy of the indenture by which Trinity Chapel acquired title to its property is attached as "Exhibit 45.")

97. Trinity Chapel's property includes fee title to approximately 457 feet of property lying on the western side of the centerline of the abandoned SGLR right-of-way that is now subject to the easement for an interim public-access recreational trail and possible future railroad reactivation.

98. On April 2, 2004 (the NITU date), Trinity Chapel was fee owner of this property with Parcel Identification Number 0060-14-0076. (A copy of the Sarasota County Appraisal report for this property is attached as "Exhibit 46.")

**Triple Diamond Commercial Properties, LLC**

99. Triple Diamond Commercial Properties, LLC ("TDCP") is a Limited Liability Corporation in Good Standing in the State of Florida and a citizen of the United States of America.

100. On May 1, 2002, TDCP acquired fee title to that property in Sarasota County, Florida by that warranty deed recorded in the Sarasota County Recorder of Deeds' Office by Instrument Number 2002081911 recorded on May 20, 2002. (A copy of the warranty deed by which TDCP acquired title to its property is attached as "Exhibit 47.")

101. TDCP's property includes fee title to approximately 700 feet of property lying on the western side of the centerline of the abandoned SGLR right-of-way that is now subject to the easement for an interim public-access recreational trail and possible future railroad reactivation.

102. On April 2, 2004 (the NITU date), TDCP was fee owner of this property with Parcel Identification Number 0406-11-0007. (A copy of the Sarasota County Appraisal report for this property is attached as "Exhibit 48.")

**Venice Plaza Ltd.**

103. Venice Plaza, Ltd. ("Venice Plaza") is a Florida Limited Partnership in Good Standing in the State of Florida and a citizen of the United States of America.

104. On February 14, 1996, Venice Plaza acquired fee title to that property in Sarasota County, Florida by that special warranty deed recorded in the Sarasota County Recorder of Deeds' Office in Book 2822, Page 1733. (A copy of the special warranty deed by which Venice Plaza acquired title to its property is attached as "Exhibit 49.")

105. Venice Plaza's property includes fee title to approximately 760 feet of property lying on the eastern side of the centerline of the abandoned SGLR right-of-way that is now subject to the easement for an interim public access trail and possible future railroad reactivation. (A copy of a survey for Venice Plaza's property is attached as "Exhibit 50.")

106. On April 2, 2004 (the NITU date), Venice Plaza was fee owner of this property with Parcel Identification Number 0407-02-0001. (A copy of the Sarasota County Appraisal report for this property is attached as "Exhibit 51.")

**West Coast Inland Navigation District**

107. West Coast Inland Navigation District ("WCIND") was created by a special act of the Florida Legislature in 1947 to serve as the "local sponsor" for the Intracoastal Waterway that was constructed through the counties of Sarasota, Manatee, Charlotte, and Lee.

108. WCIND acquired title to its property in Sarasota County, Florida by a federal Order of Taking, Law No. 6871 on December 18, 1964. (A copy of the WCIND official right-of-way maps are attached collectively as "Exhibit 52.")

109. WCIND's property includes fee title to approximately 556 feet of property lying on the western side of the centerline of the abandoned SGLR right-of-way that is now subject to the easement for an interim public-access recreational trail and possible future railroad reactivation. (A copy of a survey for WCIND's property is attached as "Exhibit 53.")

110. WCIND was fee owner of this property with Parcel Identification Number 0407-11-0007 on April 2, 2004 (the date of the NITU). (A copy of the Sarasota County Appraiser's report for this property is attached as "Exhibit 54.")

**Louis L. Alderman**

111. Louis L. Alderman is a resident of the State of Florida and a citizen of the United States of America.

112. Mr. Alderman and his wife, Lilli I. Alderman, acquired fee title to their home in Sarasota County, Florida on April 14, 1980 by that quit-claim deed recorded on April 16, 1980 in the Sarasota County Recorder of Deeds' Office in Original Records 1366, Page 1579. (A copy of the quit-claim deed by which the Aldermans acquired title to their home is attached as "Exhibit 55.") Ms. Alderman died on April 19, 1983. (A copy of Ms. Alderman's death certificate is attached as "Exhibit 56.") On April 2, 2004, Mr. Alderman was the sole owner of this property.

113. Mr. Alderman's property includes fee title to approximately 697 feet of property lying on the western side of the centerline of the abandoned SGLR right-of-way that is now subject to the easement for an interim public-access recreational trail and possible future railroad reactivation. (A copy of a survey for Mr. Alderman's property is attached as "Exhibit 57.")

114. Mr. Alderman was fee owner of this property with Parcel Identification Number 0071-09-0002 on April 2, 2004 (the date of the NITU). (A copy of the Sarasota County Appraiser's report for this property is attached as "Exhibit 58.")

**Alexandrine Boswell**

115. Alexandrine Boswell is a resident and citizen of the State of Florida and the United States of America.

116. Ms. Boswell acquired fee title to her property in Sarasota County, Florida on December 2, 1970 by that warranty deed recorded in the Sarasota County Recorder of Deeds' Office on December 2, 1970 in Sarasota County Official Records 868, Page 832. (A copy of the deed by which Ms. Boswell acquired her property is attached as "Exhibit 59.")

117. Ms. Boswell's property includes fee title to approximately 800 feet of property lying on the western side of the centerline of the abandoned SGLR right-of-way that is now subject to the easement for an interim public-access recreational trail and possible future railroad reactivation.

118. Ms. Boswell's property was subsequently sub-divided into Parcel Identification Numbers 0061-03-0002 and 0061-03-0004. Ms. Boswell was fee owner of both of these properties on April 2, 2004 (the date of the NITU). (A copy of the Sarasota County Appraiser reports are attached respectively as "Exhibit 60" and Exhibit 61.")

**Ann Converse, Susan J. Beltran, Cathy C. Siano, and Sandy Chestnutt**

119. Ann Converse, Susan J. Beltran, and Sandy Chestnutt are a residents and citizens of the State of Florida and the United States of America. Cathy C. Siano is a resident of the State of Ohio and the United States of America.

120. Gino L. Cantele and Audrey H. Cantele, as Co-Trustees of the Gino L. Cantele and Audrey H. Cantele Revocable Living Trust Agreement dated September 28 ("Cantele Living Trust"), 1994, acquired fee title to their property in Sarasota County,

Florida on May 30, 2002, by that special warranty deed recorded by Instrument Number 2002096399 on June 13, 2002. (A copy of the special warranty deed by which the Cantele's acquired title to their property is attached as "Exhibit 62.")

121. On June 2, 2004, Gino L. Cantele died, leaving Audrey H. Cantele as the Personal Representative of the Estate of Mr. Cantele and the Trustee of the Cantele Living Trust. (A copy of Mr. Cantele's death certificate is attached as "Exhibit 63.")

122. Ms. Converse, Ms. Beltran, Ms. Chestnutt, and Ms. Siano are the children of Mr. Cantele ("children").

123. According to the terms of the Cantele Living Trust, upon the death of Mr. Cantele, the assets of the his trust were to be distributed with 20% going to each of the four children and 20% going to Ms. Cantele. (A copy of the Cantele Living Trust is attached as "Exhibit 64.")

124. On August 24, 2006, Ms. Converse accepted her appointment as Successor Personal Representative of Mr. Cantele's Estate and as Successor Trustee of the Cantele Living Trust. (A copy of Ms. Converse's Acceptance by Successor Personal Representative is attached as "Exhibit 65" and a copy of Ms. Converse's Acceptance by Successor Trustee is attached as "Exhibit 66.")

125. On October 7, 2006, Ms. Cantele resigned as Personal Representative of the Mr. Cantele's Estate and as Trustee of the Cantele Living Trust. (A copy of Ms. Cantele's Resignation as Personal Representative is attached as "Exhibit 67" and a copy of Ms. Cantele's Resignation as Trustee is attached as Exhibit 68.")

126. On October 31, 2006, Ms. Cantele and the four children entered into a Settlement Agreement whereby Ms. Cantele agreed to resign as personal representative

of Mr. Cantele's estate and as trustee of the Cantele Living Trust. This Agreement also provided that the children would buy Ms. Cantele's interest in the trust and Mr. Cantele's Estate. (A copy of this Settlement Agreement is attached as "Exhibit 69.")

127. The four children, Ms. Converse, Ms. Beltran, Ms. Chestnutt, and Ms. Siano are the successor beneficiaries of the Gino L. Cantele and Audrey H. Cantele Revocable Living Trust Agreement dated September 28.

128. The Cantele Living Trust's property included fee title to approximately 394 feet of property lying on the western side of the centerline of the abandoned SGLR right-of-way that is now subject to the easement for an interim public access trail and possible future railroad reactivation.

129. The Cantele Living Trust was fee owner of this property with Parcel Identification Number 0097-04-0016 on April 2, 2004 (date of the NITU).

130. As successor beneficiaries to the Cantele Living Trust, Ms. Converse, Ms. Beltran, and Ms. Chestnutt each conveyed an undivided one-fourth (1/4) interest in the property to Canco, LLC on February 16, 2007. (A copy of the warranty deed by which Canco, LLC acquired title to this property is attached as "Exhibit 70.")

131. This property, Parcel Identification Number 0097-04-0016, is currently owned by Canco, LLC (three-fourths interest) and Cathy C. Siano (one-fourth interest). (A copy of the Sarasota County Appraiser report for this property is attached as "Exhibit 71.")

**Patricia M. Davids**

132. Patricia M. Davids is a resident and citizen of the State of Florida and the United States of America.

133. Ms. Davids' father, R.J. Martindale, originally acquired property in Sarasota County, Florida on August 8, 1944 by that deed recorded in the Sarasota County Recorder of Deeds' Office as Deed 191, Page 489. (A copy of the deed by which Mr. Martindale acquired title to the property is attached as "Exhibit 72.") On April 27, 1955, Mr. Martindale transferred title to himself and Lucile Martindale (Ms. Davids' mother), as husband and wife, by that indenture recorded in the Sarasota County Recorder of Deeds' Office in Book 348, Page 83. (A copy of this indenture is attached as "Exhibit 73.") Ms. Davids subsequently acquired title to this property on April 1, 1977 after her mother's death.

134. Ms. David's property includes fee title to approximately 700 feet of property lying on the western side of the centerline of the abandoned SGLR right-of-way that is now subject to the easement for an interim public-access recreational trail and possible future railroad reactivation.

135. Ms. Davids was fee owner of this property with Parcel Identification Number 0165-09-0032 on April 2, 2004 (the date of the NITU). (A copy of the Sarasota County Appraiser's report for this property is attached as "Exhibit 74.")

**Dee A. Deaterly**

136. Dee A. Deaterly is a resident and citizen of the State of Florida and the United States of America.

137. On September 26, 1998, Ms. Deaterly acquired her property in Sarasota County, Florida by a series of three deeds (for a single property with Parcel Identification Number 0407-10-0012): (1) that trustee's deed recorded in the Sarasota County Recorder of Deeds' Office in Book 2244, Page 1425 on September 28, 1990; (2) that warranty deed

recorded in the Sarasota County Recorder of Deeds' Office in Book 2244, Page 1424 on September 28, 1990; and (3) that quit-claim deed recorded in the Sarasota County Recorder of Deeds' Office in Book 2244, Page 1433 on September 28, 1990. (A copy of the three deeds by which Ms. Deaterly acquired her property are attached respectively as "Exhibit 75," "Exhibit 76," and "Exhibit 77.")

138. Ms. Deaterly's property includes fee title to approximately 700 feet of property lying on the eastern side of the centerline of the abandoned SGLR right-of-way that is now subject to the easement for an interim public access trail and possible future railroad reactivation. (A copy of a map for Ms. Deaterly's property is attached as "Exhibit 78.")

139. Ms. Deaterly was fee owner of this property with Parcel Identification Number 0407-10-0012 on April 2, 2004 (the date of the NITU). (A copy of the Sarasota County Appraiser's report for this property is attached as "Exhibit 79.")

**Kelly A. Glausman**

140. Kelly A. Glausman is a resident and citizen of the State of Florida and the United States of America.

141. Mr. Glausman acquired his property in Sarasota County, Florida on July 5, 1996, by that tax deed recorded in the Sarasota County Recorder of Deeds' Office on July 5, 1996 in Book 2871, Page 170. (A copy of the tax deed by which Mr. Glausman acquired his property is attached as "Exhibit 80.")

142. Mr. Glausman's property includes fee title to approximately 400 feet of property lying on the eastern side of the centerline of the abandoned SGLR right-of-way that is now subject to the easement for an interim public access trail and possible future

railroad reactivation. (A copy of a map for Mr. Glausman's property is attached as "Exhibit 81.")

143. Mr. Glausman was fee owner of this property with Parcel Identification Number 0406-02-0001 on April 2, 2004 (date of the NITU). (A copy of the Sarasota County Appraiser's report for this property is attached as "Exhibit 82.")

**Jay Hardy**

144. Jay Hardy is a resident and citizen of the State of Texas and the United States of America.

145. Mr. Hardy acquired his property in Sarasota County, Florida on January 26, 1959 by that deed recorded on January 7, 1960, in Plat Book 11, Pages 2, 2A and 2B. (A copy of the Indenture by which Mr. Hardy acquired his property is included as "Exhibit 83.")

146. Ms. Hardy's property includes fee title to approximately 375 feet of property lying on the eastern side of the centerline of the abandoned SGLR right-of-way that is now subject to the easement for an interim public access trail and possible future railroad reactivation.

147. Mr. Hardy was fee owner of this property with Parcel Identification number 0164-09-0003 on April 2, 2004 (date of the NITU). (A copy of the Sarasota County Appraiser's report for this property is attached as "Exhibit 84.")

**Faye Howard**

148. Faye Howard is a resident and citizen of the State of Florida and the United States of America.

149. Ms. Howard acquired her home in Sarasota County, Florida on July 16, 200, by that deed recorded on August 11, 2003, Instrument Number 2003160791. (A copy of the Personal Representative's Deed by which Ms. Howard acquired her home is attached as "Exhibit 85.")

150. Ms. Howard's property includes fee title to approximately 1,355 feet of property lying on the western side of the centerline of the abandoned SGLR right-of-way that is now subject to the easement for an interim public-access recreational trail and possible future railroad reactivation.

151. Ms. Howard was fee owner of this property (with Parcel Identification number 0164-09-0006 on April 2, 2004 (date of the NITU). (A copy of the Sarasota County Appraiser report for this property is attached as "Exhibit 86.")

**Ronald Miller and M&H Corporation**

152. Ronald Miller is a resident and citizen of the State of Florida and the United States of America. Mr. Miller is the former vice president of M&H Corporation, an Ohio corporation, which has since dissolved.

153. Mr. Miller and M&H Corporation acquired title to property in Sarasota County, Florida on May 24, 1977, by that warranty deed recorded in the Sarasota County Recorder of Deeds' Office in Official Records 1183, Page 690. (A copy of the warranty deed by which Mr. Miller and M&H Corporation acquired their property is attached as "Exhibit 87.")

154. Mr. Miller and M&H Corporation's property included fee title to approximately 922 feet of property lying on the western side of the centerline of the abandoned SGLR right-of-way that is now subject to the easement for an interim public

access recreational trail and possible future railroad reactivation. (A copy of a survey for this property is attached as "Exhibit 88.")

155. Mr. Miller and M&H Corporation were fee owners of this property with Parcel Identification Number 0061-15-0001 on April 2, 2004 (the date of the NITU). (A copy of the 2004 Sarasota County tax record for this property is attached as "Exhibit 89.")

156. Mr. Miller and M&H Corporation subsequently sold this property to Phillippi Pines, LLC, on August 31, 2004 by that warranty deed recorded in the Sarasota County Recorder of Deeds' Office on September 1, 2004 by Instrument Number 2004171125. (A copy of the warranty deed by which Phillippi Pines acquired this property is attached as "Exhibit 90")

157. This property was subsequently sub-divided into six properties bearing the following Parcel Identification Numbers: 0061-15-0086, 0061-15-0087, 0061-15-0088, 0061-15-0089, 0061-15-0090, and 0061-15-0091. (A copy of the Sarasota County Appraiser reports for these six properties are attached collectively as "Exhibit 91")

**Ilene Mirman**

158. Ilene Mirman is a resident and citizen of the State of Florida and the United States of America.

159. Ms. Mirman acquired her property in Sarasota County, Florida on March 31, 1999 by that warranty deed recorded in the Sarasota County Recorder of Deeds' Office on March 31, 1999 by Instrument Number 1999043615. (A copy of the warranty deed by which Ms. Mirman acquired her property is attached as "Exhibit 92.")

160. Ms. Mirman's property includes fee title to approximately 678 feet of property lying on the western side of the centerline of the abandoned SGLR right-of-way that is now subject to the easement for an interim public-access recreational trail and possible future railroad reactivation.

161. Ms. Mirman was fee owner of this property with Parcel Identification Number 0165-01-0007 on April 2, 2004 (the date of the NITU). (A copy of the Sarasota County Property Appraiser's report for this property is attached as "Exhibit 93.")

**Kenneth S. Patton**

162. Kenneth S. Patton is a resident and citizen of the State of Florida and the United States of America.

163. Mr. Patton's mother, Maxine A. Patton, acquired title to property[3] in Sarasota County, Florida ("the property") prior to her death on September 13, 1963. (A copy of the record of death of Ms. Patton is attached as "Exhibit 95.") As the sole beneficiaries under the will of Maxine A. Patton, Charlotte Patton Reed, Kenneth Stuart Patton, III, and Old Colony Trust Company, as guardian for James Gordon Patton, each inherited a one-third interest in the property. (*See id.*) On January 1, 1984, Charlotte Patton Reed conveyed her one-third interest in the property to Mr. Patton. (A copy of the fee simple deed by which Ms. Reed conveyed her interest in this property to Mr. Patton, recorded in the Sarasota County, Florida Original Records 1654, Page 0508, is attached as "Exhibit 96.") On January 7, 1985, James G. Patton and Beverly Patton conveyed their one-third interest in the property to Kenneth S. Patton and Grace E. Patton. (A copy

[3] This property is described as "real property in Laurel, Sarasota County, Florida, in Section 31, Twp. 38 South, Range 19 East, Containing approximately 8 acres of upland and 2 acres of submerged land." (A copy of the Receipt of the Estate of Maxine A. Patton, Deceased, is attached as "Exhibit 94.")

of this warranty deed by which Kenneth S. Patton and Grace E. Patton acquired an additional one-third interest in this property is recorded in the Sarasota County, Florida Original Records 1754, Page 1681, and is attached as "Exhibit 97.") As of January 7, 1985, Kenneth Patton owned 100% interest in the property.

164. Mr. Patton's property includes fee title to approximately 453 feet of property lying on the western side of the centerline of the abandoned SGLR right-of-way that is now subject to the easement for an interim public access trail and possible future railroad reactivation.

165. Mr. Patton was fee owner of this property with Parcel Identification number 0384-05-0001 on April 2, 2004 (the date of the NITU). (A copy of the Sarasota County Appraiser report for this property is attached as "Exhibit 98.")

**Sharon L. Wilkie and the James H. Wilkie Estate**

166. Sharon L. Wilkie is a resident and citizen of the State of Oklahoma and the United States of America.

167. Ms. Wilkie, and her husband, James H. Wilkie, acquired their property in Sarasota County, Florida on February 28, 1977, by that warranty deed recorded in the Sarasota County Recorder of Deeds' Office in Official Records 1166, Page 1079. (A copy of this warranty deed is attached as "Exhibit 99.") On June 28, 1988, Mr. and Mrs. Wilkie executed a warranty deed, Original Records 2043, Page 1153, transferring title of their property to James H. Wilkie as Trustee and Sharon L. Wilkie as Successor Trustee. (A copy of this warranty deed is attached as "Exhibit 100.") Mr. Wilkie died on January 30, 1989. (A copy of Mr. Wilkie's death certificate is attached as "Exhibit 101.") On October 16, 1990, Sharon L. Wilkie, as Successor Trustee transferred an undivided

23.73% interest in the property to herself individually. (A copy of this indenture is attached as "Exhibit 102.") On April 2, 2004, the property was owned by Mr. Wilkie's Estate (76.27%) and Mrs. Wilkie (23.73%).

168. The Wilkies' property includes fee title to approximately 153 feet of property lying on the eastern side of the centerline of the abandoned SGLR right-of-way that is now subject to the easement for an interim public access trail and possible future railroad reactivation.

169. The Wilkies were fees owners of this property with Parcel Identification number 0070-02-0027 on April 2, 2004 (the date of the NITU). (A copy of the Sarasota County Appraiser report for this property is attached as "Exhibit 103.")

**Robert L. Williams**

170. Robert L. Williams is a resident and citizen of the State of Florida and the United States of America.

171. Mr. Williams acquired his property in Sarasota County, Florida on September 6, 2001, by that quit-claim deed recorded in the Sarasota County Recorder of Deeds' Office on September 18, 2001, by Instrument Number 2001133675. (A copy of the quit-claim deed by which Mr. Williams acquired his property is attached as "Exhibit 104.")

172. Mr. Williams' property includes fee title to approximately 1,200 feet of property lying on the eastern side of the centerline of the abandoned SGLR right-of-way that is now subject to the easement for an interim public-access recreational trail and possible future railroad reactivation.

173. Mr. Williams was fee owner of this property with Parcel Identification Number 0383-04-0002 on April 2, 2004.

174. On August 25, 2004, Mr. Williams sold his property to MTH Associates, LLC. (A copy of the current Sarasota County Appraiser's report for this property showing the August 25, 2004, conveyance is attached as "Exhibit 105.")

**The United States of America**

175. The Defendant is the United States of America.

## THE TRAILS ACT IS A TAKING OF THE PLAINTIFFS' PROPERTY BY THE FEDERAL GOVERNMENT

176. Part of the property owned in fee by each of the Plaintiffs was formerly subject to an easement for railway purposes. This railroad easement provided that the Seaboard Air Line Railway and its successor railroads could use the designated portion of the Plaintiffs' land for the purpose of operating an active railroad.

177. The easement did not provide the Seaboard Air Line Railway, or any other person or entity, the right to use the Plaintiff's property for a public access recreational trail.

178. It is long-settled Florida law that a grant of property to a railroad for a right-of-way is not a grant of fee title but only an easement for use of the property to operate a railroad. "'A right of way for a railroad is only an easement though it be conveyed by deed...' " *Van Ness v. Royal Phosphate Co.*, 60 Fla. 284, 53 So. 381 (Fla. 1910) (citing, *Brown v. Young*, 67 Iowa 625, 29 N.W. 941.)

179. Should the railroad abandon operation of a railroad over the property upon which the right-of-way easement has been granted, the property "reverts" to the fee owner and the fee owner's property is unencumbered by any easement for current or

future railroad use. See, *Seaboard Airline Ry. V. Southern Inv. Co.* 53 Fla. 832, 44 So. 351 (Fla. 1907) and *Canal Authority of Florida v. Mainer*, 440 So. 2d 1304 (Fla. App, 1983).

180. The railroad easement was expressly limited to use of the property as and for a right-of-way for the purpose of operating an active railroad and provided that, "if at any time thereafter the said Seaboard Air Line Railway shall abandon said line for railroad purposes then the above described pieces and parcels of land shall *ipso facto* revert to and again become the property of the undersigned, his heirs, administrators and assigns." (See, Exhibit 1, *Supra.*)

181. Under the terms of the relevant easement and under Florida law, when the SGLR railroad abandoned operation of a railroad over the Plaintiffs' property, the easement was abandoned and the Plaintiffs' regained the right to use and possess their property free of any easement.

182. The Trails Act allows the conversion of abandoned railroad rights-of-way for use as interim public access recreational trails and preserves the right-of-way for possible future reactivation as a railroad. The Trails Act further provides that such conversion to trail use "shall not be treated, for purposes of any law or rule of law, as an abandonment of the use of such rights-of-way for railroad purposes" 16 U.S.C § 1247 (d).

183. The Plaintiffs property had never – at any time – been subject to an easement allowing the public to use the Plaintiff's property for a recreational trail.

184. The Plaintiffs' property has never been subject to a general right of the public to cross or make use of the Plaintiffs' property for any purpose.

185. Any easement for operation of a railroad across the Plaintiffs' property had been abandoned and the Plaintiffs' enjoyed under Florida law the right to use and occupy their property free of any present or future easement for operation of a railroad across their land.

186. The federal government, through operation of the Trails Act and issuance of the NITU has: (a) forestalled or taken from the Plaintiffs' their state law "reversionary" right to their property; (b) appropriated an easement across the Plaintiffs' property for an interim public access recreational trail, and (c) appropriated an easement for a potential future railroad right-of-way across the Plaintiff's property; and, (d) has taken from the Plaintiffs' the rights they enjoy under the Florida Constitution and Florida law to the exclusive use and physical occupation of their land.

187. Pursuant to the decision of the Federal Circuit in *Caldwell v. United States,* 391 F.3d 1226 (Fed. Cir. 2004) and *Barclay v. United States,* 443 F.3d 1368 (Fed. Cir. 2006), this taking of the Plaintiffs' property occurred when the STB issued the NITU on April 2, 2004.

188. According to the Federal Circuit, the date upon which the value of the property taken from each Plaintiff is to be established is the date of the NITU which is April 2, 2004.

189. The United States has neither instituted any condemnation proceeding against Plaintiffs, nor paid, nor offered to pay, the Plaintiffs' for the property it has taken from them.

## SPECIFIC CLAIM FOR RELIEF

## COUNT ONE

### A Claim For "Just Compensation" For The Permanent Physical Taking Of The Plaintiffs Whose Property Is Subject To The NITU

190. Plaintiffs hereby re-allege and incorporate by reference the allegations set forth in paragraphs 1 through 189 of this complaint.

191. The United States of America is a Republic and the actions and laws of the federal government are subject to the Constitution of the United States.

192. The Fifth Amendment to the Constitution of the United States provides that, "No person shall be . . . deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation."

193. The Fifth Amendment prohibits the United States from taking private property from a citizen without paying that citizen "just compensation".

194. The Fifth Amendment requirement of paying "just compensation" to a property owner from whom the government takes property includes the obligation of the government to pay the property owner: (a) the fair market value for the property taken as of the date it was appropriated by the federal government – this fair market value includes not only the value of the land actually physically confiscated but also any "severance damages" or loss in value to the property owner's entire parcel caused by the government's taking, (b) payment of an additional amount of delay damages necessary to compensate the property owner for the government's delay in paying the property owner "just compensation."

195. According to the Federal Circuit, the "date of taking" upon which the government's obligation to pay delay damages begins to run is the date of the NITU which, in this case, is April 2, 2004.

196. The Tucker Act, 28 U.S.C. § 1491(a)(1) provides in relevant part, "The United States Court of Federal Claims shall have jurisdiction to render judgment on any claim against the United States founded upon the Constitution."

197. The Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. §4654 (c) provides that just compensation includes, "reasonable costs, disbursements and expenses, including reasonable attorney, appraisal and engineering fees, actually incurred because of [the] proceeding."

198. The actions of the United States have resulted in the taking of Plaintiffs' property, by reason of the direct physical taking of Plaintiffs' property and by reason of the damage to Plaintiffs' remaining adjacent property which has suffered a loss of privacy and other severance damages as a result of the proximity of the public on the adjoining trail. The remaining property is also less valuable by reason of being divided into a smaller parcel by reason of the easement for trail use and adjoining an easement for possible future railroad use.

## SPECIFIC RELIEF REQUESTED

1. Plaintiffs respectfully request a judgment in favor of Plaintiffs:

2. Awarding Plaintiffs the full fair market value of the property taken by the government on the date it was taken (including any "severance damages" suffered by the Plaintiff in loss of value to the Plaintiffs' remaining property not actually physically taken but affected by the taking);

3. Compensation for the delay between the date of the government's taking of the Plaintiffs' property (which is the date of the NITU according to the Federal Circuit's opinion in *Caldwell v. United States,* 319 F.3d 1226 (Fed. Cir. 2004)) and the actual date when the government finally pays "just compensation" to the Plaintiffs;

4. Paying the Plaintiffs' costs and attorneys' fees incurred pursuant to The Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. §4654 (c)(2000) which provides that just compensation includes, "reasonable costs, disbursements and expenses, including reasonable attorney, appraisal and engineering fees, actually incurred because of [the] proceeding."

5. Such further relief as this Court may deem just and proper.

Respectfully submitted,

LATHROP & GAGE, L.C.

Date: May 13, 2008

By: /s/ Mark F. (Thor) Hearne, II

MARK F. (THOR) HEARNE, II
LINDSAY S.C. BRINTON
MEGHAN S. LARGENT
The Equitable Building
10 South Broadway, Suite 1300
St. Louis, MO 63102-1708
Telephone: (314) 613-2500
Facsimile: (314) 613-2550
(Mailing Address)

Franklin Square, Suite 1050 East
1300 Eye Street, NW
Washington, D.C. 20005
Telephone: (202) 962-0032
Facsimile: (202) 962-0357

Attorney for Plaintiffs