221 / 119

KNOW ALL MEN BY THESE PRESENTS, that the undersigned POTTER PALMER, JR. and PAULINE K. PALMER, his wife, of Chicago, Illinois, for and in consideration of the sum of One Dollar and other good and valuable considerations this day to them in hand paid, the receipt whereof is hereby acknowledged, do hereby remise, release and forever quitclaim unto the SEABOARD AIR LINE RAILWAY, a corporation of the State of Virginia and other States, a right - of - way for railroad purposes over and across the following described parcel of land, lying and being in the County of Manatee, State of Florida;

A strip of land one hundred (100) feet wide, being fifty (50) feet on each side of the center line of Seaboard Air Line Railway as located across the lands owned by the said grantors herein in the SW¼ of the SW¼ of Section 30, Township 35 South, Range 19 East, Manatee County, Florida, said center line being described as follows: Beginning at a point on the west line of the SW¼ of the SW¼ of Section 30, Township 35 South, Range 19 East, 490 feet, more or less, north of the southwest corner thereof; running thence South 12° 11' East a distance of 500 feet, more or less, to a point on the south line of said SW¼ of SW¼ of Section 30, distant 110 feet, more or less, east of the southwest corner thereof. Said strip contains 1.15 acres, more or less. TO HAVE AND TO HOLD the said premises unto the said Seaboard Air Line Railway, its successors and assigns, and to its or their own proper use, benefit and behoof forever, for railroad purposes.

THIS conveyance is made upon the express condition, however, that if the Seaboard Air Line Railway shall not construct upon said land and commence operation thereon within one year from the date hereof, a line of railroad, or if at any time thereafter the said Seaboard Air Line Railway shall abandon said land for railroad purposes, then the above described piece and parcel of land shall ipso facto revert to and again become the property of the undersigned, their heirs, administrators and assigns. IN WITNESS WHEREOF, the said Potter Palmer, Jr., and Pauline K. Palmer his wife, have hereunto set their hands and seals this November tenth A. D. 1910

Signed, sealed and delivered in our presence:

POTTER PALMER (SEAL)

PAULINE K. PALMER (SEAL)

Adrian C. Honore'

H. H. Honore'

STATE OF ILLINOIS )

COUNTY OF COOK.)

I hereby certify that on this 10th day of November A. D. 1910, before me, a Notary Public for the State and County aforesaid, personally came Potter Palmer, Jr., and Pauline K. Palmer, his wife, who are well known to me and known to me to be the persons described in and who executed the foregoing instrument, and severally acknowledged that they executed the same for the uses and purposes therein mentioned

EXHIBIT 1

and the said Pauline K. Palmer, the wife of the said Potter Palmer, Jr., upon an examination taken and made by me separate and apart from her said husband acknowledged that she made herself a party to the said instrument for the purpose of renouncing and relinquishing her dower and right of dower in and to the lands, tenements and hereditaments therein described and thereby granted and released, and that such relinquishment of dower was made by her freely and voluntarily, and without any compulsion, apprehension, fear or constraint of or from her said husband.

WITNESS my hand and official seal the day and year above written.

M. C. BAINBRIDGE
Notary Public.

My commission expires May 18, 1911.

(NOTARIAL SEAL)

The foregoing is a true copy of the original instrument, which was filed for record the 12th day of November, A. D. 1910 and recorded the 22nd day of Dec., A. D. 1910.

[illegible]

Clerk.

KNOW ALL MEN BY THESE PRESENTS, That the undersigned, ADRIAN C. HONORE, a bachelor of Chicago, Illinois, for and in consideration of the sum of one dollar ($1.00) and other good and valuable considerations this day to him in hand paid, the receipt whereof is hereby acknowledged, does hereby remise, release and forever quit claim unto the SEABOARD AIR LINE RAILWAY, a corporation of the State of Virginia and other States, a right of way for railroad purposes over and across the following described parcels of land, lying and being in the County of Manatee, and State of Florida:

(1) A strip of land one hundred (100) feet wide, being fifty (50) feet on each side of the center line of the Seaboard Air Line Railway as located across the lands owned by the grantor herein in Sections three (3) and ten (10), Township thirty-seven (37) South, Range eighteen (18) East, Manatee County, Florida; said center line being described as follows:

Beginning at a point on the north line of the northwest quarter of the northeast quarter of Section three (3), Township thirty-seven (37) South, Range eighteen (18) east, seven hundred and twenty-four (724) feet west of the northeast corner thereof; running thence in a straight line south twelve (12) degrees, eleven (11) minutes east, nine thousand eight hundred and fourteen (9814) feet, more or less, across said Section three (3), and crossing the south line of said section at a point eight hundred and eighty-eight (888) feet west of the southeast corner thereof, and across the East one-half of the northeast quarter and the northeast quarter of the southeast quarter of Section ten (10), Township thirty-seven (37) south, Range eighteen (18) East, and crossing the south line of said northeast quarter of the southeast quarter of Section ten (10) at a point thirty-three (33) feet west of the southeast corner thereof, and across the S.E. 1/4 of the S.E. 1/4 of said Section ten (10) to a point on the east line thereof. The said strip of land contains twenty-two and five-tenths (22.5) acres, more or less.

(2) A strip of land one hundred (100) feet wide, being fifty (50) feet on each side of the center line of the Seaboard Air Line Railway as located across the lands owned by the grantor herein in Sections fourteen (14), twenty-three (23), twenty-six (26) and thirty-five (35) Township thirty-seven (37) South, Range eighteen (18) East, and Sections two (2), one (1) and twelve (12), Township thirty-eight (38) South, Range eighteen (18) East, Manatee County, Florida; said center line being described as follows:

Beginning at a point on the North line of the northwest quarter of the northwest quarter of Section fourteen (14), Township thirty-seven (37) South, Range eighteen (18) East, two hundred and fifty-two (252) feet east of the northwest corner thereof; running thence in a straight line South twelve (12) degrees, eleven (11) minutes East, thirty-five thousand

one hundred and eighty (35,180) feet, more or less, across Sections fourteen (14), twenty-three (23), twenty-six (26) and thirty-five (35), Township thirty-seven (37) South, Range eighteen (18) East, and Sections two (2), one (1) and twelve (12), Township thirty-eight (38) South, Range eighteen (18) East, crossing the South line of the southeast quarter of the southwest quarter of Section twelve (12) at a point six hundred eighty-eight (688) feet west of the southeast corner thereof. Said strip of land contains _____ acres, more or less.

(3) A strip of land one hundred (100) feet wide, being fifty (50) feet on each side of the center line of the Seaboard Air Line Railway as located across the lands owned by the grantor herein in the southeast quarter of Section thirteen (13), Section twenty-four (24) and the northeast quarter of the northeast quarter of Section twenty-five (25), Township thirty-eight (38) south, Range eighteen (18) East, Manatee County, Florida; said center line being described as follows:

Beginning at a point on the west line of the northwest quarter of the southeast quarter of Section thirteen (13), Township thirty-eight (38) South, Range eighteen (18) East, five hundred and sixty (560) feet, more or less, south of the northwest corner thereof; running thence in a straight line south twelve (12) degrees, eleven (11) minutes east, eight thousand nine hundred and twenty-five (8925) feet, more or less, across the southeast quarter of Section thirteen (13) Section twenty-four (24), and the northeast quarterof the northeast quarter of Section twenty-five (25), Township thirty-eight (38) South, Range eighteen (18) East, to a point on the south line of the said northeast quarter of the north-east quarter of Section twenty-five (25), distant five hundred sixty-five (565) feet, more or less, east of the southwest corner thereof. Said strip of land contains twenty and five tenths (20.5) acres, more or less.

(4) A strip of land one hundred (100) feet wide, being fifty (50) feet on each side of the center line of the Seaboard Air Line Railway, as located across lands, owned by the grantor herein in the northeast quarter of the southeast quarter and the northeast quarter of the southeast quarter of the southeast quarter of Section twenty-five (25), Township thirty-eight (38) South, Range eighteen (18) East, Manatee County, Florida; said center line being described as follows:

Beginning at a point on the north line of the northeast quarter of the southeast quarter of Section twenty-five (25), Township thirty-eight (38) South, Range eighteen (18) East, four hundred and sixty-seven (467) feet west of the northeast corner thereof; running thence in a straight line south twelve (12) degrees, eleven (11) minutes east, a distance of two thousand and fifteen (2015) feet, more or less, to a point on the south line of the northeast quarter of the southeast quarter of the southeast quarter of Section twenty-five (25), distant forty-five (45) feet,more or less, west of the southeast corner thereof. Said strip of land contains four and six-tenths (4.6) acres, more or less.

TO HAVE AND TO HOLD the said premises unto the said Seaboard Air Line Railway, its successors and assigns and to its or their own proper use, benefit and behoof forever for railroad purposes.

This conveyance is made upon the express condition, however that if the Seaboard Air Line Railway shall not construct upon said land and commence the operation thereon with one year of the date hereof of a line of railroad, or, if at any time thereafter the said Seaboard Air Line Railway shall abandon said land for railroad purposes then the above described pieces and parcels of land shall ipso facto revert to and again become the property of the undersigned, his heirs, administrators and assigns.

IN TESTIMONY WHEREOF the undersigned has hereunto set his hand and seal this 5th day of November, A.D. 1910.

Adrian C. Honoré (SEAL)

WITNESSES:

Parke C. Archer

[signature]

State of Illinois, )
) ss.
County of Cook. )

I hereby certify that on this 5th day of November, A.D. 1910, before me, the undersigned authority, personally appeared in the State and County aforesaid, the said Adrian C. Honore, a bachelor, personally known to me to be the individual described in and who executed the above written deed of conveyance, and for himself, acknowledged that he signed, sealed and delivered the said deed freely and voluntarily and for the uses and purposes therein stated.

IN WITNESS WHEREOF I have hereunto set my hand and affixed my Notarial Seal the day and year above written.

Frederick C. Hack
Notary Public in and for County of Cook, State of Illinois.

My Notarial Commission expires on the 21th day of December A.D.1913.

THIS INDENTURE, Made the 20th day of June A.D. 1901

between Sarah O. Webber (Widow)

of the County of Manatee and State of Florida

party of the first part, and The Seaboard Air Line Railway a Corporation organized under the laws of the State of ~~of the County of~~ Virginia ~~and State of~~ and other States

party of the second part,

Witnesseth, That the said party of the first part, for and in consideration of the sum of One dollar, and other valuable consideration ~~Dollars~~, in hand paid by the said party of the second part, the receipt whereof is hereby acknowledged, has remised, released and quit-claimed, and by these presents do remise, release and quit-claim unto the said party of the second part, and its successors ~~heirs~~ and assigns forever, for railroad purposes, all the right, title, interest, claim and demand which the said party of the first part has in and to the following described lot piece or parcel of land, to wit: A strip of land one hundred (100) feet wide, being fifty (50) feet on each side of the center line of the Seaboard Air Line Railway as located across lands owned by the said party of the first part in the S.E.¼ of the N.W.¼ of Section 13 Township 38 South, Range 18 East, Manatee County Florida. Said center line being described as follows: Beginning at point on the North line of the S.E.¼ of the N.W.¼ of Section 13, Township 38 South, Range 18 East 405 feet, more or less, West of the Northeast corner thereof, running thence South 12° 11' East, across the S.E.¼ of the N.W.¼ of said Section 13, a distance of 1350 feet more or less, to a point on the South line of the S.E.¼ of the N.W.¼ of said Section 13, distant 125 feet, more or less, West of the Southeast corner thereof. Said strip of land contains 3.1 acres, more or less.

It is understood and agreed that if the said premises shall hereafter be abandoned by the said party of the second part its successors or assigns for railroad purposes in that event the said premises shall ipso facto revert to the party of the first part whereas executors, administrators and assigns

To Have and to Hold the same, together with all and singular the appurtenances thereunto belonging, or in anywise thereunto appertaining, and all the estate, right, title, interest and claim whatever, of the said party of the first part, either in law or equity, to the only proper use, benefit and behoof of the said party of the second part, its successors and assigns ~~heirs and assigns forever~~ for railroad purposes.

In Witness Whereof, the said party of the first part has hereunto set her hand and seal the day and year first above written.

Signed, sealed, and delivered in presence of

R. B. [illegible] — Sarah O Webber (Seal.)

Mo. J. Campbell — (Seal.)

STATE OF FLORIDA, } ss.
County of Manatee }

*I HEREBY CERTIFY, That* Sarah O. Webber

*whose name* is *signed to the foregoing deed, and who* is *personally known to me, came before me this day and acknowledged that* she *executed the same for the purposes therein expressed, and as* her *free act and deed, and the said*

*upon an examination made separate and apart from her said husband, acknowledged before me that she executed the same for the purpose of relinquishing her dower and right of dower in and to the lands therein described, and that she did the same freely and voluntarily, and without any compulsion, constraint, apprehension or fear of or from her said husband.*

*WITNESS my hand and seal this* 24 *day of* June *A.D. 1911*

My Commission Expires Jan 1912

J. M. O. D. Campbell
Notary Public

THIS DEED, Made this 6th..day of September 1910, between the H.M. FRAZEE AND WIFE, parties of the first part, and Seaboard Air Line Railway, party of the second part,

WITNESSETH, That for and in consideration of the sum of Two hundred ⁰⁰/100 Dollars ($200.00....) in hand paid, the receipt whereof is hereby acknowledged, and other valuable considerations, sell and convey unto the party of the second part, all their right, title and interest, of any nature whatsoever, in and to the following property, to-wit:

All those certain pieces or parcels of land lying and being in the County of Manatee and State of Florida, and being described as follows:

A strip of land one hundred (100) feet wide, being fifty (50) feet on each side of the center line of Seaboard Air Line Railway as located across lands owned by the said parties of the first part in the SW 1/4 of the NW 1/4 of the NW 1/4 of Section 31, Township 38 South, Range 19 East, Manatee county, Florida. Said center line being described as follows:

Beginning at a point on the north line of the SW 1/4 of the NW 1/4 of the NW 1/4 of Section 31, Township 38 South, Range 19 East, 245 feet, more or less, east of the northwest corner thereof; running thence south 12° 11' East, a distance of 650 feet, more or less, to a point on the south line of the SW 1/4 of the NW 1/4 of the NW 1/4 of said Section 31, distant 385 feet, more or less, east of the southwest corner thereof.

Said strip of land contains 1.5 acres, more or less.

TOGETHER WITH all and singular the tenements, heriditaments and appurtenances thereunto belonging or appertaining, and every right, title or interest, legal or equitable, of the said parties of the first part.

IN TESTIMONY WHEREOF, Witness the following signatures and seals.

H. M. Frazee (Seal)

Bertie H. Frazee (Seal)

Witness

R L Johnson

L I Stalnaker

State of Florida }
} ss
of }
Manatee

I Hereby certify that on the..5th..day of September A.D. 1910, before me the undersigned authority, personally appeared in the county and State aforesaid H. M. Frazee ..........and Bertie H. Frazee....his wife, personally known to me to be the individuals described in and who as parties of the first part executed the above written deed of conveyance and each for himself and herself acknowledged that they signed, sealed and delivered the said deed freely and voluntarily and for the purposes therein stated, and afterwards on the same day and at the same place, the said Bertie H. Frazee wife of the said H. M. Frazee ..............on an examination taken and made by me separately and apart from her said husband, acknowledged for herself that she executed said deed for the purpose of forever selling, transferring, conveying, renouncing and relinquishing all her dower and right of dower and all her right title and interest in and to the lands described in and conveyed by said deed of conveyance and that she executed such deed of conveyance for such purposes freely and voluntarily and without compulsion, constraint, apprehension or fear of or from her said husband.

IN WITNESS WHEREOF, I have hereunto set my Hand and affixed my official seal the day and year first above written

J. B. Chaplin Jr

Notary Public in and for the State of Florida...., County...... of Manatee...

My commission expires:
Oct. 17th. 1911

THIS DEED, Made this 5th ..... day of September .1910, between ~~CLEMENT~~ Clement PHILLIPS AND WIFE, parties of the first part, and Seaboard Air Line Railway, party of the second part,

WITNESSETH, That for and in consideration of the sum of One hundred & no/100. Dollars ($100.00....) in hand paid, the receipt whereof is hereby acknowledged, and other valuable considerations, the parties of the first part hereby grant, bargain, sell and convey unto the party of the second part, all their right, title and interest, of any nature whatsoever, in and to the following property, to-wit:

All those certain pieces or parcels of land, lying and being in the County of Manatee and State of Florida, and being described as follows:

All that certain triangular piece or parcel of land lying in the SE 1/4 of the SE 1/4 of the SE 1/4 of Section 25, Township 38 South, Range 18 East, Manatee county, Florida; it being that portion of said SE 1/4 of SE 1/4 of SE 1/4 of Section 25 lying east of a line drawn parallel with and fifty (50) feet distant, westwardly, from the center line of the Seaboard Air Line Railway, as located across Township 38 South, Range 18 East and containing 46/100 acre, more or less.

A strip of land one hundred (100) feet wide, being fifty (50) feet on each side of the center line of Seaboard Air Line Railway, as located across lands owned by said parties of the first part in the NW 1/4 of the NW 1/4 of the NW 1/4 of Section 31, Township 38 South, Range 15 East, Manatee county, Florida. Said center line being described as follows:

Beginning at a point on the north line of the NW 1/4 of the NW 1/4 of the NW 1/4 of Section 31, Township 38 South, Range 19 East, 110 feet, more or less, east of the northwest corner thereof; running thence South 12° 11' East, a distance of 650 feet, more or less, to a point on the south line of said NW 1/4 of the NW 1/4 of the NW 1/4 of Section 31, distant 245 feet, more or less, east of the southwest corner thereof.

Said strip of land contains 1.5 acres, more or less

TOGETHER WITH all and singular the tenements, heriditaments and appurtenances thereunto belonging or appertaining, and every right, title or interest, legal or equitable, of the said parties of the first part in and to the same.

IN TENSTIMONY WHEREOF, Witness the following signatures and seals.

Witnesses

............Clement Phillips..........(Seal)

J. A. Chapline Jr.

.Ida...Phillips.....(Seal)

L. J. Stalinsky

State of Florida } ss
of
Manatee County

I hereby certify that on the 5th day of September A.D. 1910, before me the undersigned authority, personally appeared in the County and State aforesaid, Clement Phillips and Lula Phillips his wife, personally known to me to be the individuals described in and who as parties of the first part executed the above written deed of conveyance and each for himself and herself acknowledged that they signed, sealed and delivered the said deed freely and voluntarily and for the purposes therein stated, and afterwards on the same day and at the same place, the said Lula Phillips wife of the said Clement Phillips on an examination taken and made by me separately and apart from her said husband, acknowledged for herself that she executed said deed for the purpose of forever selling, transferring, conveying, renouncing and relinquishing all her dower and right of dower and all her right title and interest in and to the lands described in and conveyed by said deed of conveyance and that she executed such deed of conveyance for such purposes freely and voluntarily and without compulsion, constraint, apprehension or fear of or from her said husband.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year first above written.

J B Chapline Jr
Notary Public in and for the State of Florida, County of Manatee

My commission expires;
Oct. 17th. 1911

191

570

THIS DEED, made this third day of September 1910, between Jesse Knight, widower,
party of the first part, and Seaboard Air Line Railway, party of the second part.
WITNESSETH, that for and in consideration of the sum of Ten Dollars ($10.00) in hand
paid, the receipt whereof is hereby acknowledged, and other valuable considerations
the party of the first part hereby grants, bargains, sells and conveys unto the party
of the second part, all their right, title and interest, of any nature whatsoever
in and to the following property, to-wit:
All those certain pieces or parcels of land, lying and being in the County of
Manatee, and State of Florida, and being described as follows:
A strip of land one hundred (100) feet wide, being fifty (50) feet on each side of
the center line of Seaboard Air Line Railway as located across lands owned by the
said party of the first part in the S. ½ of the SW¼ of Section 31, Township 38 South
Range 19 East, Manatee County, Florida. Said center line being described as follows;
Beginning at a point on the north line of the S½ of the SW¼ of Section 31, Township
38 South, Range 19 East, 320 feet, more or less, west of the northeast corner thereof
running thence South 12° 11' East, a distance of 500 feet, more or less, to a point
on the South bank of Shakit Creek, in said S½ of the SW¼ of Section 31, Township 38
South, Range 19 East. Said strip of land contains 1.15 acres, more or less.
TOGETHER WITH all and singular the tenements, hereditaments and appurtenances there-
unto belong or appertaining, and every right, title or interest, legal or equitable,
of the said party of the first part in and to the same.
IN TESTIMONY WHEREOF, witness the following signature and seal.

JESSE KNIGHT (SEAL)

WITNESSES

Claude T. Curry

A. F. Wrede

STATE OF FLORIDA, COUNTY OF MANATEE ) SS.

I hereby certify that on this the third of September, A. D., 1910, before me, the
undersigned authority, personally appeared, in the State and County aforesaid,
Jesse Knight, widower, personally known to me to be the individual described in and
who, as party of the first part, executed the above written deed of conveyance, and
for himself, acknowledged that he signed, sealed and delivered said deed freely and
voluntarily and for the purposes therein stated.
IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal, the
day and year first above written.

CLAUDE T. CURRY
Notary Public in and for the County of
Manatee, State of Florida. My commission expires: June 24, 1914. (NOTARIAL SEAL)

The foregoing is a true copy of the original instrument filed for record the 1
of sept, A. D. 1910 and recorded the 14th day of Sept., A. D. 1910.

THIS DEED, Made this *third* day of *September* 1910, between JESSE KNIGHT, WIDOWER, and F.R.KNIGHT *(unmarried)* ~~AND WIFE~~, parties of the first part, and Seaboard Air Line Railway, party of the second part.

WITNESSETH, That for and in consideration of the sum of *Ten*....Dollars ($*10.00*....) in hand paid, the receipt whereof is hereby acknowledged, and other valuable considerations, the parties of the first part hereby grant, bargain, sell and convey unto the party of the second party all their right, title and interest, of any nature whatsoever, in and to the following property, to-wit:

All those certain pieces or parcels of land, lying and being in the County of Manatee and State of Florida, and being described as follows:

A strip of land one hundred (100) feet wide, being fifty (50) feet on each side of the center line of Seaboard Air Line Railway as located across lands owned by the said parties of the first part in the E 1/2 of the NW 1/4 of Section 6, Township 39 South, Range 19 East, Manatee county, Florida. Said center line being described as follows:

Beginning at a point on the north line of the E 1/2 of the NW 1/4 of Section 6, Township 39 South, Range 19 East, 1314 feet west of the northeast corner thereof; running thence South 12° 11' East a distance of 2730 feet, more or less, to a point on the south line of said E 1/2 of the NW 1/4 of Section 6, distant 590 feet, more or less, east of the southwest corner thereof.

Said strip of land contains 6.3 acres, more or less.

*Provided the said rail road is built within two years from date hereof, otherwise this deed becomes null & void.*

TOGETHER WITH all and singular the tenements, hereditaments and appurtenances thereunto belonging or appertaining, and every right, title or interest, legal or equitable, of the said parties of the first part in and to the same.

IN TESTIMONY WHEREOF, Witness the following signatures and seals.

*Witnesses to signature of Jesse Knight.*
*Claude T. Curry*
*A. F. Wrede*

*Jesse Knight* (SEAL)

*F. R. Knight* (SEAL)

........................................ (SEAL)

*Witnesses to signature of F. R. Knight*
*R. B. Johnson*
*Wm Kean*

State of Florida, )
County of Manatee ) ss.

I hereby certify that on this the Third of September A.D., 1910, before me, the undersigned authority, personally appeared, in the State and County aforesaid, Jesse Knight widower, personally known to me to be the individual described in and who, as party of the first part, executed the above written deed of conveyance, and for himself, acknowledged that he signed, sealed and delivered said deed freely and voluntarily and for the purposes therein stated.

In Witness Whereof, I have hereunto set my hand and affixed my official seal, the day and year first above written.

Claude T. Curry
Notary Public in and for the County of Manatee, State of Florida.

My commission expires: June 24, 1914.

THIS DEED, Made this ..29th......day of..September..1910, between J.B.HUTCHINGS & Lena Hutchings his wife, part of the first part, and Seaboard Air Line Railway, party of the second part

WITNESSETH, That for and in consideration of the sum of ....One..........Dollars ($1.00.......) in hand paid, the receipt whereof is hereby acknowledged,and other valuable considerations,the part of the first part hereby grant , bargain , sell and convey unto the party of the second part, all their right, title and interest,of any nature whatsoever, in and to the following property, to-wit:

All those certain pieces or parcels of land, lying and being in the County of Manatee and State of Florida, and being described as follows:

A strip of land one hundred (100) feet wide, being fifty (50) feet on each side of the center line of the Seaboard Air Line Railway as located across the lands owned by said part of the first part in the NE 1/4 of the SW 1/4 of Section 13, Township 38 South, Range 18 East, Manatee County, Florida, said center line being described as follows:

Beginning at a point on the North line of the NE 1/4 of the SW 1/4 of Section 13, Township 38 South, Range 18 East, 125' feet more or less, West of the Northeast corner thereof; running thence South 12°11' East a distance of 575 feet,more or less, to a point on the East line of said NE 1/4 of SW 1/4 of Section 13, distant 560 feet, more or less, South of the Northeast corner thereof.

Said strip of land contains 1.3 acres, more or less.

TOGETHER WITH all and singular the tenements, hereditaments and appurtenances thereunto belonging and appertaining, and every right, title or interest, legal or equitable, of the said parties of the first part in and to the same.

IN TESTIMONY WHEREOF, Witness the following signatures and seals.

J.B. Hutchings........(SEAL)

Lena Hutchings.(SEAL)

Witnesses

Randolph H. Blain

Venita Seibert

State of ~~Florida~~, Kentucky )
:- ss.
County of Jefferson )

I hereby certify that on this the 29th of September, A.D., 1910, before me, the undersigned authority, personally appeared, in the State and County aforesaid, J. B. Hutchings personally known to me to be the individual described in and who, as party of the first part, executed the above written deed of conveyance, and for himself, acknowledged that he signed, sealed and delivered said deed freely and voluntarily and for the purposes therein stated.

In Witness Whereof, I have hereunto set my hand and affixed my official seal, the day and year first above written.

Randolph H. Blain
Notary Public in and for the County of Jefferson, State of ~~Florida~~. Kentucky

My commission expires: Jan 13th 1912

State of ~~Florida~~ Kentucky, )
)-ss.
County of Jefferson )

I hereby certify that on this the 29th day of September, A.D., 1910, before me the undersigned authority personally appeared in the County and State aforesaid Lena Hutchings, the wife of J.B. Hutchings, personally known to me to be the individual described in and who as one of the parties of the first part executed the above written deed of conveyance, and for himself acknowledged that she signed, sealed and delivered said deed freely and voluntarily and for the purposes therein stated, and afterwards on the same day and at the same place said Lena Hutchings, wife of the said J.B. Hutchings, on an examination taken and made by me separately and apart from her said husband, acknowledged for herself that she executed said deed for the purposes of forever selling, transferring, conveying, renouncing and relinquishing all her dower and right of dower and all her right, title and interest in and to the lands described in and conveyed by said deed of conveyance and that she executed such deed of conveyance for such purposes freely and voluntarily and without compulsion, constraint, apprehension or fear of or from her said husband.

In Witness Whereof, I have hereunto set my hand and affixed my official seal the day and year first above written.

Randolph H. Blain
Notary Public in and for the
State of Kentucky, county
of Jefferson

My commission expires: June 15th / 12

THIS DEED, Made this fifth day of September 1910, between A.E. BLACKBURN AND WIFE, parties of the first part, and Seaboard Air Line Railway, party of the second part.

WITNESSETH, That for and in consideration of the sum of Two Hundred Dollars ($200.00...) in hand paid, the receipt whereof is hereby acknowledged, and other valuable consideration, the parties of the first part hereby grant, bargain, sell and convey unto the party of the second part, all their right, title and interest, of any nature whatsoever, in and to the following property, to-wit:

All those certain pieces or parcels of land, lying and being in the County of Manatee and State of Florida, and being described as follows:

A strip of land one hundred (100) feet wide, being fifty (50) feet on each side of the center line of the Seaboard Air Line Railway as located across lands owned by the said parties of the first part in the SE 1/4 of the NE 1/4 of Section 25, Township 38 South, Range 18 East, Manatee county, Florida. Said center line being described as follows:

Beginning at a point on the North line of the SE 1/4 of the NE 1/4 of Section 25, Township 38 South, Range 18 East, 565 feet, more or less, East of the Northwest corner thereof; running thence South 12° 11' East a distance of 1375 feet, more or less, to a point on the South line of said SE 1/4 of NE 1/4 of Section 25, distant 467 feet West of the Southeast corner thereof.

Said strip of land contains 3.15 acres, more or less.

TOGETHER WITH all and singular the tenements, hereditaments and appurtenances thereunto belonging or appertaining, and every right, title or interest, legal or equitable, of the said party of the first part in and to the same.

IN TESTIMONY WHEREOF, Witness the following signatures and seals.

Witnesses:--

W. Geo. Simmons — A.E. Blackburn (SEAL)

R. B. [illegible] Daniel — Mollie M. Blackburn (SEAL)

State of Florida )
( ss
of )
County of Manatee

I hereby certify that on the fifth day of September A.D. 1910, before me the undersigned authority, personally appeared in the County and State aforesaid, A.E. Blackburn ........... and Mollie M. Blackburn his wife, personally known to me to be the individuals described in and who as parties of the first part executed the above written deed of conveyance and each for himself and herself acknowledged that they signed, sealed and delivered the said deed freely and voluntarily and for the purposes therein stated, and afterwards on the same day and at the same place, the said Mollie M. Blackburn wife of the said A.E. Blackburn ............... on an examination taken and made by me separately and apart from her said husband, acknowledged for herself that she executed said deed for the purpose of forever selling, transferring, conveying, renouncing and relinquishing all her dower and right of dower and all her right title and interest in and to the lands described in and conveyed by said deed of conveyance and that she executed such deed of conveyance for such purposes freely and voluntarily and without compulsion, constraint, apprehension or fear of or from her said husband.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year first above written.

R. McDaniel
Notary Public in and for the State
of. ~~Florida~~, County
of. Manatee

My commission expires: March 12th 1914

34355
EB

SERVICE DATE - LATE RELEASE APRIL 2, 2004

SURFACE TRANSPORTATION BOARD

DECISION AND NOTICE OF INTERIM TRAIL USE OR ABANDONMENT

STB Docket No. AB-400 (Sub-No. 3X)

SEMINOLE GULF RAILWAY, L.P.–ABANDONMENT EXEMPTION–
IN SARASOTA COUNTY, FL

Decided: April 1, 2004

By petition filed on December 15, 2003, Seminole Gulf Railway, L.P. (SGLR) seeks an exemption under 49 U.S.C. 10502 from the prior approval requirements of 49 U.S.C. 10903 to abandon a portion of its Venice Branch between milepost SW 892 outside the city limits of the City of Sarasota, FL, and milepost 904.4 near the City of Venice, FL, a distance of approximately 12.43 miles, in Sarasota County, FL (the line). The line includes a "wye" and stub at approximately milepost SW 904.2 and side tracks. Notice of the filing was served and published in the Federal Register on January 2, 2004 (69 FR 123). A request for issuance of a notice of interim trail use (NITU) and imposition of a public use condition was filed by Sarasota County, FL (the County).[1] The exemption will be granted, subject to environmental, public use, trail use, and standard employee protective conditions.

BACKGROUND

SGLR purchased the assets comprising the line from CSX Transportation, Inc. (CSXT) in 1987 and currently leases the underlying property from CSXT. SGLR acquired a common carrier obligation when it purchased the line.

According to SGLR, there has been no traffic on the line since March 14, 2002, and there have been no rail movements over the last three miles of the line for over 10 years. During 2002, SGLR delivered 20 cars of plywood and lumber to Kimal Lumber (Kimal) at a team track located on the line. These commodities were then transloaded to trucks. According to petitioner, Kimal now receives cars from SGLR at a team track location on a different line segment for transload to trucks. Three other customers previously received service on the line but none since May 2001. Sheckler Produce received one carload in 2001 and now receives service at another SGLR team track on a different line. Ferrelgas of Sarasota received its last car at the end of 2000. King Plastic Corporation received 21

---

[1] The County states that its comment should be treated as a petition for reconsideration or protest. It also asserts that it takes no position on the merits of the abandonment. Accordingly, the County's comment will simply be considered a request for a NITU and public use condition.

EXHIBIT
2

cars through May 2001 at the team track on the line. However, it opened a new plant at a different location and now receives deliveries from SGLR at Fort Ogden on a different line segment. Moreover, SGLR asserts that the four shippers have been served with copies of this petition, and none has responded. Petitioner contends that there is little likelihood of traffic returning to the line and that there is interest in developing the right-of-way for trail use. Finally, SGLR states that it and CSXT have granted The Trust for Public Lands an option to acquire the line for conversion to a trail.

DISCUSSION AND CONCLUSIONS

Under 49 U.S.C. 10903, a rail line may not be abandoned without the Board's prior approval. Under 49 U.S.C. 10502, however, the Board must exempt a transaction or service from regulation when it finds that: (1) continued regulation is not necessary to carry out the rail transportation policy of 49 U.S.C. 10101; and (2) either (a) the transaction or service is of limited scope, or (b) regulation is not necessary to protect shippers from the abuse of market power.

Detailed scrutiny under 49 U.S.C. 10903 is not necessary to carry out the rail transportation policy. By minimizing the administrative expense of the application process, an exemption will reduce regulatory barriers to exit [49 U.S.C. 10101(7)]. An exemption will also foster sound economic conditions and encourage efficient management by relieving SGLR of the expense of maintaining a line no longer generating traffic and revenue and by allowing SGLR to apply its assets more productively elsewhere on its system [49 U.S.C. 10101(5) and (9)]. Other aspects of the rail transportation policy will not be adversely affected.

Regulation of the proposed transaction is not necessary to protect shippers from the abuse of market power because all shippers apparently continue to receive similar rail service on other SGLR lines and there are no prospects of new shippers requiring service on the line. Nevertheless, to ensure that the shippers are informed of the Board's action, SGLR will be required to serve a copy of this decision on the shippers within 5 days of the service date and certify to the Board that it has done so. In light of the market power finding, the Board need not determine whether the proposed abandonment is of limited scope.

Under 49 U.S.C. 10502(g), the Board may not use its exemption authority to relieve a carrier of its statutory obligation to protect the interests of its employees. Accordingly, as a condition to granting this exemption, the Board will impose the employee protective conditions set forth in <u>Oregon Short Line R. Co.–Abandonment–Goshen</u>, 360 I.C.C. 91 (1979).

SGLR has submitted an environmental report with its petition and has notified the appropriate Federal, state, and local agencies of the opportunity to submit information concerning the environmental

impacts of the proposed abandonment. See 49 CFR 1105.11. The Board's Section of Environmental Analysis (SEA) has examined the environmental report, verified the data it contains, and analyzed the probable effects of the proposed action on the quality of the human environment. SEA served an environmental assessment (EA) on February 13, 2004, and requested comments by March 15, 2004.

In the EA, SEA notes that the National Geodetic Survey (NGS) has identified 17 geodetic station markers that may be affected by the proposed abandonment. Accordingly, SEA recommends that SGLR provide NGS with at least 90 days' notice prior to initiation of any salvage operations so that plans can be made for the relocation of the geodetic station markers.

No comments to the EA were filed. Therefore, the condition recommended by SEA in the EA will be imposed. The proposed abandonment, as conditioned, will not significantly affect either the quality of the human environment or the conservation of energy resources.

On January 20, 2004, the County filed a request for interim trail use/rail banking under the National Trails System Act, 16 U.S.C. 1247(d) (Trails Act). The County submitted a statement of willingness to assume financial responsibility for the management of, for any legal liability arising out of the transfer or use of (unless the user is immune from liability, in which case it need only indemnify the railroad against any potential liability), and for payment of any and all taxes that may be levied or assessed against, the right-of-way. The County acknowledged that the use of the right-of-way for trail purposes is subject to the user's continuing to meet its responsibilities and is subject to possible future reconstruction and reactivation for rail service, as required at 49 CFR 1152.29. SGLR has indicated that it is willing to negotiate for interim trail use. Because the County's request complies with the requirements of 49 CFR 1152.29, and SGLR is willing to enter into negotiations, a NITU will be issued as requested. The parties may negotiate an agreement during the 180-day period prescribed below. If an agreement is executed, no further Board action is necessary. If no agreement is reached within 180 days, SGLR may fully abandon the line, subject to the conditions imposed below. See 49 CFR 1152.29(d)(1). Use of the right-of-way for trail purposes is subject to restoration for railroad purposes.

SEA has indicated in its EA that the right-of-way may be suitable for other public use following abandonment. As noted above, the County has also requested that a 180-day public use condition be imposed, precluding SGLR from: (1) disposing of the corridor, other than the tracks, ties, and signal equipment, except for public use on reasonable terms; and (2) removing or destroying potential trail-related structures such as bridges, trestles, culverts, and tunnels. The County submits that this corridor would make an excellent recreational trail and conversion of the property to trail use is in accordance with local plans, and the structures are valuable for recreational trails. The County states that the 180-

day period is needed to assemble or review title and environmental information and to begin negotiations with SGLR.

Persons who file under the Trails Act may also file for public use under 49 U.S.C. 10905. See Rail Abandonments–Use of Rights-of Way as Trails, 2 I.C.C.2d 591, 609 (1986) (Trails). When the need for both conditions is established, it is the Board's policy to impose them concurrently, subject to the execution of a trail use agreement. The County has met the public use criteria prescribed at 49 CFR 1152.28(a)(2) by specifying: (1) the condition sought; (2) the public importance of the condition; (3) the period of time for which the condition would be effective; and (4) justification for the period of time requested. Accordingly, a 180-day public use condition will be imposed, commencing from the effective date of this decision and notice, to enable any State or local government or other interested person to negotiate the acquisition of the line for public use. If a trail use agreement is reached on a portion of the right-of-way, SGLR must keep the remaining right-of-way intact for the remainder of the 180-day period to permit public use negotiations. Also, a public use condition is not imposed for the benefit of any one potential purchaser. Rather, it provides an opportunity for any interested person to acquire the right-of-way that has been found suitable for public purposes, including trail use. Therefore, with respect to the public use condition, SGLR is not required to deal exclusively with the County, but may engage in negotiations with other interested persons.

The parties should note that operation of the trail use and public use procedures could be delayed, or even foreclosed, by the financial assistance process under 49 U.S.C. 10904. As stated in Trails, 2 I.C.C.2d at 608, offers of financial assistance (OFA) to acquire rail lines for continued rail service or to subsidize rail operations take priority over interim trail use/rail banking and public use. Accordingly, if an OFA is timely filed under 49 CFR 1152.27(c)(1), the effective date of this decision and notice will be postponed beyond the effective date indicated here. See 49 CFR 1152.27(e)(2). In addition, the effective date may be further postponed at later stages in the OFA process. See 49 CFR 1152.27(f). Finally, if the line is sold under the OFA procedures, the petition for abandonment exemption will be dismissed and trail use and public use precluded. Alternatively, if a sale under the OFA procedures does not occur, the trail use and public use processes may proceed.

It is ordered:

1. Under 49 U.S.C. 10502, the Board exempts from the prior approval requirements of 49 U.S.C. 10903 the abandonment of the above-described line, subject to the employee protective conditions in Oregon Short Line R. Co.--Abandonment--Goshen, 360 I.C.C. 91 (1979), and the conditions that SGLR shall: (1) provide NGS with at least 90 days' notice prior to initiation of any salvage operations so that plans can be made for the relocation of the geodetic station markers; (2) leave intact all of the right-of-way, including bridges, trestles, culverts, and tunnels (but not track,

ties, and signal equipment) for a period of 180 days from the effective date of this decision and notice, to enable any State or local government agency or any other interested person to negotiate the acquisition of the line for public use; and (3) comply with the interim trail use/rail banking procedures set forth below.

2. SGLR is directed to serve a copy of this decision and notice on all shippers within 5 days after the service date of this decision and notice and certify to the Board that it has done so.

3. If an interim trail use/rail banking agreement is reached, it must require the trail user to assume, for the term of the agreement, full responsibility for the management of, any legal liability arising out of the transfer or use of (unless the user is immune from liability, in which case it need only indemnify the railroad against any potential liability), and for the payment of any and all taxes that may be levied or assessed against, the right-of-way.

4. Interim trail use/rail banking is subject to the future restoration of rail service and to the user's continuing to meet the financial obligations for the right-of-way.

5. If interim trail use is implemented and subsequently the user intends to terminate trail use, it must send the Board a copy of this decision and notice and request that it be vacated on a specified date.

6. If an agreement for interim trail use/rail banking is reached by the 180th day after service of this decision and notice, interim trail use may be implemented. If no agreement is reached by that time, SGLR may fully abandon the line, provided the conditions imposed above are met.

7. An OFA under 49 CFR 1152.27(c)(1) to allow rail service to continue must be received by the railroad and the Board by April 12, 2004, subject to time extensions authorized under 49 CFR 1152.27(c)(1)(i)(C). The offeror must comply with 49 U.S.C. 10904 and 49 CFR 1152.27(c)(1). Each OFA must be accompanied by the filing fee, which currently is set at $1,100. <u>See</u> 49 CFR 1002.2(f)(25).

8. OFAs and related correspondence to the Board must refer to this proceeding. The following notation must be typed in bold face on the lower left-hand corner of the envelope: "**Office of Proceedings, AB-OFA.**"

9. Provided no OFA has been received, this exemption will be effective on May 2, 2004. Petitions to stay must be filed by April 19, 2004, and petitions to reopen must be filed by April 27, 2004.

10. Pursuant to the provisions of 49 CFR 1152.29(e)(2), SGLR shall file a notice of consummation with the Board to signify that it has exercised the authority granted and fully abandoned the line. If consummation has not been effected by SGLR's filing of a notice of consummation by April 2, 2005, and there are no legal or regulatory barriers to consummation, the authority to abandon will automatically expire. If a legal or regulatory barrier to consummation exists at the end of the 1-year period, the notice of consummation must be filed not later than 60 days after satisfaction, expiration or removal of the legal or regulatory barrier.

By the Board, Chairman Nober.

Vernon A. Williams
Secretary